FOOT v. BUCHANAN, United States Marshal.

(Circuit Court, N. D. Mississippi, W. D. January 14, 1902.)

1. WITNESSES—EVIDENCE—INCRIMINATING—PROTECTION—CONSTITUTION — STATUTE.

Under the fifth amendment of the constitution of the United States, providing that no person shall be compelled in any criminal case to be a witness against himself, a witness before the grand jury cannot be required to answer as to his participation in, and knowledge of, a combination to regulate and control the price of cotton seed and the product and price of oil throughout certain states, in violation of the act to protect trade and commerce against unlawful restraints and monopolies (26 Stat. 209), notwithstanding Rev. St. § 860, providing that no evidence obtained from a witness by means of a judicial proceeding shall be given in evidence or in any manner used against him in any court in any criminal proceeding, since such section does not exempt the witness from prosecution for the offense which may be disclosed by his testimony.

2. SAME — INTERSTATE COMMERCE ACT — VIOLATION — WITNESS — EXEMPTION FROM PROSECUTION — UNLAWFUL MONOPOLIES — PROHIBITION — APPLICABILITY OF EXEMPTION.

Act Cong. Feb. 11, 1893 (27 Stat. 443), providing that no person shall be excused from testifying in a proceeding growing out of an alleged violation of an act to regulate interstate commerce, approved February 4, 1887, on the ground that his testimony will tend to incriminate him, and that no person shall be prosecuted, etc., on account of anything concerning which he may testify in such proceeding, applies only to proceedings connected with the act of February 4, 1887, and does not apply to a prosecution for violation of the act to protect trade and commerce against unlawful restraints and monopolies (26 Stat. 209), so as to abrogate in relation thereto Const. U. S. Amend. 5, providing that no person shall be compelled in a criminal case to be a witness against himself.

3. SAME—QUESTION FOR JUDGE.

Where a witness claims that the answer to a question will tend to incriminate him, it is not for the witness, but for the judge, to decide whether, under all the circumstances, such might be the effect, and the witness entitled to the privilege of silence.

4. SAME—NATURE OF TESTIMONY.

Where a person has already been indicted for an offense about which he is to be examined as a witness, and the questions asked him tend

to connect him with such offense, the testimony sought is within the inhibition of Const. U. S. Amend. 5, providing that no person shall be compelled in any criminal case to be a witness against himself.

**5. SAME—ASSURANCE OF SAFETY—RELINQUISHMENT OF PRIVILEGE.**
Where a witness before a grand jury declines to answer certain questions, and is taken before the judge, who assures him that he can safely answer, as his testimony cannot be used against him, he is not compelled by such assurance to relinquish his constitutional privilege, where the answer may tend to criminate him.

**6. SAME—CONTEMPT—COMMITMENT—HABEAS CORPUS—RELIEF.**
Where a witness is committed for contempt in refusing to answer all of a series of questions, for the reason that the answers would tend to criminate him, and some of the answers would have that tendency, he should not be denied relief on habeas corpus because some of the questions might be safely answered.

## Habeas Corpus.

Lawrence Foot was subpœnaed as a witness before the grand jury for the district court of the United States for the Western division of the Northern district of Mississippi. He was sworn and examined in relation to violations of an act of congress approved July 2, 1890, entitled "An act to protect trade and commerce against unlawful restraints and monopolies" (26 Stat. 209). This act is intended to suppress conspiracies or trusts in restraint of trade, and it provides that every person who shall violate its provisions shall, on conviction, be punished by fine not exceeding $5,000, or by imprisonment not exceeding one year, or both, in the discretion of the court. The assistant United States attorney propounded to the witness a number of questions, among which were the following:

"State whether or not you attended any meeting, called either at Memphis or New Orleans or Meridian or elsewhere, in the early part of this fall, or at any time within the past eighteen months, to discuss fixing a price upon cotton seed, or the products of cotton seed?

"Has your mill, or any other, to your knowledge, contributed anything to the selection of a committee whose duty it is to see that the various mills in the states of Mississippi, Louisiana, and Tennessee keep up a uniform rate on cotton seed and its products?

"If your mill should immediately advance the price of cotton seed, or lower the price of products, would you be subject to any sort of forfeiture, censure, or supervision from any source whatever?

"Is there any sort of understanding existing between the mills in Mississippi, Tennessee, or Louisiana, either written or verbal, by which the various mills are to be allowed to press a certain amount of seed; and, in the event any greater amount is pressed by any mill, is there any obligation on the part of such mill to account for the same to any committee whose duty it is to look after such matters?

"Is it not a fact that within the past six months one oil mill will not invade what is known as the 'territory' of another oil mill to purchase seed; and is it not a fact that all the mills in a certain territory have an agreement whereby each day, or every few days, they communicate with each other over the telephone, by letter, or otherwise, and inform each other what they are paying for seed, or what they intend to pay next day or next week, and by virtue of such communications or agreements do not all the mills pay the same price for seed and sell all products within such territory at the same price, and has this not been the practice this fall?

"During the past six months has there existed an agreement between the oil mills of Memphis, or those of Mississippi, Tennessee, and Louisiana, that you will all be governed, in purchasing cotton seed and selling the products thereof, by the Memphis or New Orleans market, and do you strictly adhere to said agreement?"

The witness refused to answer these questions, and gave as the reason for his refusal that "in answering the questions he would criminate himself, and put the government in possession of information as to the details of

said alleged combine and agreement, and the names of parties and witnesses, which might supply the means of convicting him of the same offense." For this refusal to answer, on report of the grand jury, the witness was carried before the district court, where he repeated his reasons for declining to answer. The court required the witness to return to the grand jury and answer the questions, and, on his refusal to obey the order of the court and answer the questions, he was committed to jail, "there to remain from day to day and term to term of this court until he shall answer said interrogatories, or be otherwise discharged by due course of law." Being in the custody of the United States marshal for the Northern district of Mississippi under this order of the court, he filed a petition for the writ of habeas corpus. The petition alleges the facts which have been stated, and also, on information and belief, that the petitioner "at the time of his refusal to answer the questions propounded to him by the grand jury aforesaid, and at the present time, stands indicted in the district court of the United States at Jackson, Mississippi, for the same identical offense which the grand jury was seeking to investigate in propounding the questions aforesaid to your relator." The writ was issued, and the return of the marshal shows that the petitioner was held under the said order of the court. The United States attorney, who, by order of the judge granting the writ, was notified of the proceedings, filed the following addition to the marshal's return: "We admit that the questions in the petition were asked, but deny that the defendant is entitled to the relief sought, and state the facts to be that the defendant was assured by the court that no information given by him in answer to the questions would or could be used against him in any prosecution in any United States court in this state. And we deny that the defendant knew of any indictment against him at the time the questions were asked, etc., but admit that he was under indictment."

A. K. Foot and James Stone (J. C. Wilson, on the brief), for petitioner.

M. A. Montgomery, U. S. Atty., for respondent.

SHELBY, Circuit Judge (after stating the case as above). 1. It is a rule of the common law that a witness will not be compelled to answer any question, the reply to which would supply evidence by which he could be convicted of a criminal offense. This doctrine was firmly implanted in the common law of Great Britain and of the colonies long before the adoption of the constitution of the United States. The principle is held so sacred in this country that it is embodied in the respective constitutions of all the states, as well as in the federal constitution. The principle, as applied to this case, is found in the fifth amendment to the constitution: "No person shall be compelled in any criminal case to be a witness against himself." The question here is, does this provision protect the petitioner in declining to answer the questions propounded to him? The general power of the court to punish a witness for contempt who refuses to answer is unquestioned. But that power is limited by the language quoted from the constitution. Any exercise of jurisdiction or power violative of this provision is void, and the witness imprisoned by an order made in excess of the court's authority is entitled to be discharged on the writ of habeas corpus. Ex parte Fisk, 113 U. S. 713, 5 Sup. Ct. 724, 28 L. Ed. 1117; Rev. St. § 752. Was the order of the district court requiring the petitioner to answer these questions, and committing him for his refusal to answer, in excess of the court's authority?

In 1890 Charles Counselman was subpœnaed before the United

States grand jury for the Northern district of Illinois which was engaged in investigating alleged violations of an act to regulate commerce, approved February 4, 1887 (24 Stat. 379). Questions were propounded to him, the answers to which would tend to criminate him. He declined to answer, and was carried before the court. The court held (Judge Gresham presiding) that section 860 of the Revised Statutes of the United States provided that no evidence obtained from a witness by means of a judicial proceeding shall be given in evidence, or in any manner used against him, in any court of the United States, in any criminal proceeding, and that he was fully protected by this statute; that therefore he should be required to answer. It was held, in view of this statute (Rev St. § 860), that the witness could not claim the privilege of silence under the fifth amendment of the constitution. Counselman's petition seeking to be discharged on habeas corpus was dismissed, and he was remanded to the custody of the marshal. In re Counselman (C. C.) 44 Fed. 268. Counselman took an appeal to the supreme court. The decision of the lower court was reversed. The supreme court held that the witness could not be required to answer. Referring to section 860, the supreme court said:

"It could not and would not prevent the use of his testimony to search out other testimony to be used in evidence against him or his property in a criminal proceeding in such court. It could not prevent the obtaining and the use of witnesses and evidence which would be attributable directly to the testimony he might give under compulsion, and on which he might be convicted, when otherwise, and if he had refused to answer, he could not possibly have been convicted." And again: "We are clearly of opinion that no statute which leaves the party or witness subject to prosecution after he answers the criminating question put to him can have the effect of supplanting the privilege conferred by the constitution of the United States. Section 860 of the Revised Statutes does not supply a complete protection from all the perils against which the constitutional prohibition was designed to guard, and is not a full substitute for that prohibition. In view of the constitutional provision, a statutory enactment, to be valid, must afford absolute immunity against future prosecutions for the offense to which the question relates." The court concluded: "From a consideration of the language of the constitutional provision, and of all the authorities referred to, we are clearly of opinion that the appellant was entitled to refuse, as he did, to answer." Counselman v. Hitchcock, 142 U. S. 547, 564–585, 12 Sup. Ct. 195, 198–207, 35 L. Ed. 1110, 1114–1122.

By the unanimous judgment of the supreme court the appellant, Counselman, was discharged from custody.

That case seems conclusive of the case at bar. But the learned district attorney contends that "the case of Brown v. Walker, 161 U. S. 591, 16 Sup. Ct. 644, 40 L. Ed. 819, is virtually a repeal of the case of Counselman v. Hitchcock." Is that contention true? After the opinion in Counselman v. Hitchcock was rendered, the congress passed an act, approved February 11, 1893, to give immunity to witnesses in certain cases. It provides, in brief, that no person shall be excused from testifying in interstate commerce actions, or from producing books, papers, contracts, etc., before the interstate commerce commission, or in any cause or proceeding, criminal or otherwise, based upon or growing out of any alleged violation of the act of congress entitled "An act to regulate commerce," ap-

proved February 4, 1887, on the ground or for the reason that the testimony or evidence required of him would tend to criminate him or subject him to a penalty or forfeiture, and that no person shall be prosecuted or subjected to any penalty or forfeiture on account of any transaction, matter, or thing concerning which he may testify or produce evidence before said commission, or in obedience to its subpœna, or in any such case or proceeding. 27 Stat. 443. The supreme court having decided that section 860 of the Revised Statutes did not confer complete indemnity on witnesses, this act was evidently passed to confer such indemnity in the cases to which it refers. The act has no application to the case at bar. It is confined by its terms to proceedings connected with "An act to regulate commerce," approved February 4, 1887, and amendments thereto. The petitioner in the case at bar was examined before the grand jury in reference to offenses under "An act to protect trade and commerce against unlawful restraints and monopolies," approved July 2, 1890 (26 Stat. 209; 1 Supp. Rev. St. p. 762). In the case of Brown v. Walker, 161 U. S. 591, 16 Sup. Ct. 644, 40 L. Ed. 819, cited by the district attorney, the court construed the act of February 11, 1893 (27 Stat. 443). The court held (four of the justices dissenting) that the act affords absolute immunity to the witness in the cases to which the act relates against prosecution, state or federal, for the offense about which the witness is examined, and deprives the witness of his constitutional right to refuse to answer. This act, as we have said, by its terms is confined to a certain class of cases, and has no application to the case at bar. There is no statute applicable to the case at bar which tends to protect the witness, except section 860 of the Revised Statutes, and that has been held by the supreme court not to afford the protection furnished by the constitution. The principle established by the decision in Counselman v. Hitchcock, so far as it is applicable to the case at bar, is unaffected by the opinion of the court in Brown v. Walker. The result of the two cases is (1) that since the statute of February 11, 1893 (27 Stat. 443), parties or witnesses in cases or proceedings under the act of February 4, 1887 (24 Stat. 379), to regulate commerce, and amendments thereto, may be required to answer questions that tend to criminate the witness or party; but (2) witnesses or parties in other cases may not be required to answer criminating questions, because section 860 of the Revised Statutes does not afford complete indemnity to the witness or party. The first result is established by a bare majority in Brown v. Walker. The second proposition is established without dissent in Counselman v. Hitchcock.

2. It is true that the witness cannot avoid answering questions upon his mere statement that his answers to them will tend to criminate him. It is for the judge to decide whether his answer will reasonably have such tendency, or whether it will furnish an element or link in the chain of evidence necessary to convict him. In determining whether or not the witness is entitled to the privilege of silence, the court may look at all of the circumstances of the case, and determine whether or not there is reasonable ground to appre-

hend danger to the witness from his being compelled to testify. If the fact that the witness is in danger appears, great latitude should then be allowed to him in judging for himself of the effect of any particular question. A question which might appear at first a very slight and innocent one might, by establishing a link in a chain of evidence, become the means of convicting the witness. Ex parte Irvine (C. C.) 74 Fed. 954. In the case at bar it appears that the defendant was already indicted for the offense about which he was examined, and the questions tended to connect him with the offense for which he is indicted. There can be no doubt that under such circumstances, when the questions are such as seek to connect him with the crime under investigation, the court will not require him to answer them.

3. It is set up in the answer filed by the district attorney that the petitioner, when carried before the court upon his failure to answer questions before the grand jury, was assured by the court that no information given by him in his answers to the questions would or could be used against him in any prosecution in any court of the United States. The petitioner could not be required to waive his constitutional privilege upon such an assurance by the court. He has a right to stand upon his constitutional privilege, notwithstanding such assurance, and to remain silent whenever any question is asked, the answer to which may tend to criminate him. Temple v. Com., 75 Va. 892.

4. It is argued by the district attorney that some of the questions asked (we have not stated them all) could have been answered without endangering petitioner, and that, if any one of them did not call for a criminating answer, he is not entitled to relief. We cannot accept that view. He was carried before the court, and the court required him to answer all of the questions. He is under commitment for refusal to answer all. It was one examination, relating to one subject, and the questions culminated in an effort to show the witness' connection with the misdemeanor charged. Where there is a series of questions, the examiner cannot "pick out one, and say, if that be put, the answer will not criminate him." If it is one step having a tendency to criminate him, he is not compelled to answer. People v. Mather, 4 Wend. 230, 254; Paxton v. Douglas, 16 Ves. 240, 243.

The act to protect trade and commerce against unlawful restraints and monopolies is the law of the land, and should be enforced. We would make no order that would tend to obstruct its proper enforcement. It confers jurisdiction on the United States courts, and provides a remedy in a civil action "by way of petition setting forth the case, and praying that such violation shall be enjoined or otherwise prohibited." 26 Stat. 209, § 4. This provision does not prevent the criminal prosecution of those guilty of its violation. But the procedure against violators of the act must conform to law. The penalties of fine and imprisonment provided by the act may be imposed by the same procedure sustained by the same kind of evidence, either direct or circumstantial, that is admissible in prosecutions for other misdemeanors, and it ought not to be necessary, and certainly is

not permissible, to resort to methods in conflict with the constitutional rights of the citizen.

It is ordered that the petitioner, Lawrence Foot, be discharged from custody. Petitioner discharged.

PARDEE and McCORMICK, Circuit Judges, who were present at the hearing of this case, concur in this opinion.