*In Re* HERMAN WERNER FOR WRIT OF HABEAS CORPUS.

APRIL 9, 1924.

PRESENT: Sweetland, C. J., Vincent, Stearns, Rathbun, and Sweeney, JJ.

2

SWEENEY, J. This petition of Herman Werner for a writ of habeas corpus against Frank P. King, deputy sheriff of Newport county, is based upon the following facts.

Indictment No. 1941, State v. James J. Connell, for keeping and maintaining a common nuisance, to wit, a building, place and tenement used for illegal gaming, came on for trial at a session of the Superior Court in said county on the fifth day of March, 1924. After the jury had taken a view of the premises alleged to be a gambling nuisance the petitioner was called as a witness for the State. He was duly sworn and answered several questions asked by First Assistant Attorney General Hurley. After identifying the place where the alleged nuisance was located, Mr. Hurley asked the witness this question: "And have you ever been upstairs in that building?" Mr. Nolan, attorney for the defendant, asked the trial justice to advise the witness that he had a constitutional right to refuse to answer any question that would tend to incriminate him. Mr. Hurley opposed this request, claiming that the witness had no right to decline to testify. After a discussion of the matter by the trial justice and the attorneys, Mr. Hurley asked the witness this question: "Mr. Werner, state whether or not at any time during the period from July 1st to September 1st, 1923, you played roulette in the upstairs part of that building at 106 Williams Street?" After further discussion by the attorneys and the trial justice, the witness declined to answer the question on the ground that

his answer would tend to incriminate him. Mr. Hurley asked that the witness be directed to answer the question and, if he refused, that he be adjudged in contempt. The trial justice instructed the witness that, under the law, he was compelled to answer the question. The witness persisted in his refusal, claiming his constitutional privilege, and was adjudged in contempt and placed in the custody of Deputy Sheriff King. The witness then filed this petition for a writ of habeas corpus, praying that the deputy sheriff may be required to release him from custody; that he may be purged of contempt, and directed not to answer said question.

The petitioner claims the protection of Section 13, Article I of the Constitution of this state, which is as follows: "Sec. 13. No man in a court of common law shall be compelled to give evidence criminating himself." This section is one of the "essential and unquestionable rights" contained in a "declaration of certain constitutional rights and principles" in our Constitution, and declared to "be of paramount obligation in all legislative, judicial and executive proceedings." It is a restatement of an ancient maxim of the common law, and is found in the constitutions of all of the states and of the United States.

The petitioner claims that an affirmative answer to the question would tend to prove that he had been guilty of violating Section (6220), General Laws, 1923, which provides that "every person who shall frequent any gambling house or place where gaming is practised or carried on . . . shall be imprisoned not exceeding thirty days." The State contends that any answer to the question would not show that he had violated the statute as it would require proof of more than one visit by him to said place to show that he had frequented it. This contention of the State is fully answered by the language of Chief Justice MARSHALL, *in re Willie*, 25 Fed. Cas. 38. This was a case arising during the Burr Trial, on the question whether a witness could refuse to answer a question, if his answer might incriminate him,

and the Chief Justice said: " 'According to their statement,' (the counsel for the United States,) 'a witness can never refuse to answer any question, unless that answer unconnected with other testimony, would be sufficient to convict him of a crime. This would be rendering the rule almost perfectly worthless. Many links frequently compose that chain of testimony which is necessary to convict any individual of a crime. It appears to the court to be the true sense of the rule, that no witness is compellable to furnish any one of them against himself. It is certainly not only a possible, but a probable case, that a witness, by disclosing a single fact, may complete the testimony against himself; and to every effectual purpose accuse himself as entirely as he would by stating every circumstance which would be required for his conviction. That fact of itself might be unavailing, but all other facts without it would be insufficient. While that remains concealed within his own bosom, he is safe; but draw it from thence, and he is exposed to a prosecution. The rule which declares that no man is compellable to accuse himself, would most obviously be infringed, by compelling a witness to disclose a fact of this description. What testimony may be possessed, or is attainable, against any individual, the court can never know. It would seem, then, that the court ought never to compel a witness to give an answer which discloses a fact that would form a necessary and essential part of a crime which is punishable by the laws.' " In *Emery's* case, 107 Mass. 182, in construing a similar provision in the Massachusetts constitution, the court said: "It is a reasonable construction to hold that it protects a person from being compelled to disclose the circumstances of his offence, the sources from which, or the means by which evidence of its commission, or of his connection with it, may be obtained, or made effectual for his conviction, without using his answers as direct admissions against him. For all practical purposes, such disclosures would have the effect to furnish evidence against the party making them. They might furnish the

only means of discovering the names of those who could give evidence concerning the transaction, the instrument by which a crime was perpetrated, or even the *corpus delicti* itself." See also *People* v. *Argo*, (Ill.) 86 N. E. Rep. 679; *Ex parte Tahbel*, (Cal.) 189 Pac. 804; *Ex parte Irvine*, 74 Fed. 954; *Foot* v. *Buchanan*, 113 Fed. 156; *McGorray* v. *Sutter*, (Ohio) 24 L. R. A. (N. S.) 165; *Kansas* v. *Jack*, (Kan.) 1 L. R. A. (N. S.) 167. A witness cannot avoid answering questions upon his mere statement that his answers to them will tend to criminate him. It is for the judge to decide whether his answer will reasonably have such a tendency, or whether it will furnish an element or link in the chain of evidence necessary to convict him. *Foot* v. *Buchanan*, 113 Fed. 156; *Ex parte Irvine*, 74 Fed. 954; *Mason et al* v. *U. S.*, 244 U. S. 362. We have held that a deponent cannot be excused from answering questions, on the ground that her answers would incriminate herself, where the questions do not show that such a result would be possible. *Rosendale* v. *McNulty*, 23 R. I. 465.

As it is clear that an affirmative answer of the witness to the question would prove that he had been in the house and that gaming was carried on there, and thus two of the essential elements or links in the chain of evidence necessary to prove him guilty of violating said Section (6220) would be furnished by himself, he had the constitutional right to decline to answer the question.

The State contends that even if the testimony of the witness would show that he had been guilty of an offence punishable by Section (6220) he may be compelled to answer by force of Section (6208), which provides that "in any prosecution for an offense and in any action or proceeding whatsoever under the provisions of this chapter, every person playing at the game in relation to which the prosecution, action or proceeding may be instituted . . . shall be a competent witness for the advancement of such prosecution, action or proceeding, and may be compelled to answer as to any matter relating thereto." The petitioner

claimed before the trial justice that this section is unconstitutional, but the trial justice overruled said claim, as required by Section (5110), General Laws, 1923, and ordered the witness to answer the question.

This section provides that the witness "may be compelled to answer as to any matter relating" to the prosecution for an offence which, as we have stated, would thereby compel him to give testimony tending to criminate himself, and is in direct conflict with the section of the constitution which provides that "no man in a court of common law shall be compelled to give evidence criminating himself."

Upon the question raised by a conflict between a similar statute and the constitution the decisions are to the effect that the statute cannot be enforced unless it provides absolute immunity against future prosecution for the offence to which the question relates. The leading case upon this proposition is that of *Counselman* v. *Hitchcock*, 142 U. S. 547, in which the adjudged cases in the courts of the United States and the states, are reviewed. In that case the court held that a person could not be compelled, when acting as a witness in any investigation, to give testimony which might tend to show that he had committed a crime; that it was a reasonable construction of the constitutional provision that the witness should be protected from being compelled to disclose the circumstances of his offence, or the source from which, or the means by which evidence of its commission and of his connection with it might be obtained, and made effectual for his conviction, without using his answers as direct evidence against him; that no statute which left the witness subject to prosecution, if he answered the criminating question put to him, could have the effect of supplanting the privilege conferred by the constitution; and that, in view of the constitutional provision, before the statute could be used for the purpose sought, it must afford absolute immunity against future prosecution for the offence to which the question related. This case has been followed so many times that it is unnecessary to cite other decisions.

Section (6208) was first enacted at the January Session of the General Assembly, 1851, as part of an act entitled "An act for the more effectual suppression of gaming," and then contained an immunity clause. In the revision of the laws in 1857, the immunity clause was omitted from the section, and it has been continued in its amended and present form through five successive revisions of the laws, including that of 1923. As said Section (6208) contains no provision for the immunity of the witness, in case his testimony should incriminate him, we are constrained to hold that it is violative of petitioner's constitutional right, and that he cannot be compelled to answer said question, as provided therein.

The State also contends that even if the answer of the witness would incriminate him, he should be compelled to answer the question because he is given immunity by Section (6218), General Laws, 1923, which provides that "no person shall be excused from attending and testifying . . . on the grounds or for the reason that the testimony or evidence . . . required by him may tend to criminate him or subject him to a penalty or forfeiture. But no person shall be prosecuted or subjected to any penalty or forfeiture for or on account of any transaction, matter or thing concerning which he may testify . . . before said court or in obedience of its subpœna or in any such case or proceedings." This section does not apply to the case at bar. It made its first appearance in our laws as Section 6 of Chapter 1219 of the Public Laws, passed at the January Session, 1905, entitled, "An Act for the better prevention of dishonest practices of agents, employees, and servants, and those dealing with them." The six sections of said Chapter 1219 took the place of Section 17 of Chapter 283 of the General Laws, 1896, which was repealed thereby. In the revision of the General Laws of 1909 said six sections became Sections 21 to 26 of Chapter 349 and in the revision of the Laws of 1923 said six sections remained as part of said chapter and are Sections (6213)–(6218).

In construing a statute the legislative intent is to be determined with reference to the subject matter to which it applies. Its construction must be reasonable and in harmony with the legislative intent. It may be read with reference to all the facts and circumstances connected with its enactment. 36 Cyc. 1128, 1137. Immunity statutes do not grant immunity excepting for offences under the acts to which they refer. As to evidence tending to incriminate a witness of other offences entirely unrelated to such acts, he still retains the constitutional privilege.

It was clearly the intent of the legislature that Section (6218) giving immunity to a witness should apply to a person compelled to testify to matters relating to dishonest practices; and by no reasonable construction can it be held that it was intended to apply to other offences.

The attorney general, through his first assistant, assured the witness in open court that immunity would be granted to him and it is claimed that this offer of immunity was effective to free the witness from any possibility of prosecution. The statute does not give the attorney general authority to grant such immunity to any witness.

The weight of authority is to the effect that a prosecuting attorney has no authority to make a binding agreement or contract that, if a person charged with an offence would testify against others, he should be exempt from all criminal liability. Note to *Faucett* v. *State*, L. R. A. 1918 A 372, 376. In *Temple* v. *Com.* 75 Va. 892, a witness refused to testify in the trial of an indictment upon the ground that by doing so he would criminate himself. It appeared that the Commonwealth's attorney told the court that it was not his intention to prosecute the witness. In sustaining the claim of the witness the court said, "No implied suggestion by the court, nor any implied or positive promise by the Commonwealth's attorney could operate as an indemnity to the witness that he would not be further prosecuted. He had a right to stand upon his constitutional privilege, and not to trust to the chances of a further prosecution. The

court, of course, could offer him no such indemnity. Nor could the Commonwealth's attorney, for he might die, or be removed, or resign, and his successor might see fit to institute a prosecution against him. Or whether he did or not, a grand jury, without the advice or consent of the Commonwealth's attorney might institute such prosecution. A man, having a privilege secured to him by the constitution, cannot be required to waive that high constitutional right upon the suggestion, either by the court, who had no right to make it, or by the Commonwealth's attorney, who is powerless to redeem his pledge, that *peradventure* no prosecution would be instituted against him. He has a right to stand upon his constitutional privilege, and to remain silent whenever any question is asked him the answer to which *may tend to criminate himself*. See also *Foot* v. *Buchanan*, 113 Fed. 156.

The petitioner is entitled to avail himself of his constitutional privilege against self-incrimination, and cannot be compelled to answer said question.

By rescript filed March 11, 1924, this court granted the prayer of the petitioner and ordered a writ of *habeas corpus* to issue.

*Sheffield & Harvey*, for petitioner.

*Herbert L. Carpenter, Attorney General, George Hurley, Assistant Attorney General*, for State.