**UNITED STATES v. HERRON et al.**

District Court, N. D. California, S. D.
August 28, 1928.

No. 19460.

George J. Hatfield, U. S. Atty., and Geo. W. Naus, Asst. U. S. Atty., both of San Francisco, Cal.

Edwin V. McKenzie, of San Francisco, Cal., for defendants.

LOUDERBACK, District Judge. The indictment alleges, in substance, that on the 17th day of February, 1926, the defendants Madden and Strittmatter and certain others were on trial before the United States court for this division and district; that one John Rasmussen was under subpœna to appear and testify for the government on the following day; and it is further alleged in the indictment that the defendants herein "then and there feloniously did conspire to corruptly endeavor to influence and impede the due administration of justice, in the said Southern division in the course of and in connection with the said trial, by corruptly endeavoring to influence the witness to assert, under the Fifth Amendment to the Constitution of the United States of America, a claim of personal privilege to refuse to testify at said trial when called to the stand as a witness therein, upon the ground that the compulsion of his testimony would compel him in a criminal case to be a witness against himself, and it was within the object of the conspiracy as aforesaid that the assertion by the said Rasmussen of the claim of personal privilege, as aforesaid, should be apparently, but not really, for his personal protection, and should be in fact for the purpose of corruptly giving shelter, behind the said privilege, to the said J. H. Madden and the said Hans Strittmatter, under the pretext of shielding the said witness Rasmussen." It is further alleged that, as overt acts to effect the object of the conspiracy, the defendant Madden advised Rasmussen to consult an attorney, and obtained Rasmussen's consent to do so, and thereafter introduced this defendant to Rasmussen, and that this defendant advised and urged the witness Rasmussen to refuse to testify upon the ground that his testimony would incriminate him.

The second count of the indictment alleges in substance that the defendants corruptly endeavored to influence the said Rasmussen to refuse to testify at the said trial, upon the ground that his testimony would incriminate him, and that it was the corrupt intention and object of the defendants that the assertion by Rasmussen of the claim of personal privilege should be apparently, but not really, for his personal

benefit, and should be in fact for the purpose of corruptly giving shelter behind the said privilege to the said J. H. Madden and the said Hans Strittmatter. The two counts deal with the same alleged transaction—the first being based upon the theory of conspiracy to endeavor to influence said Rasmussen; the second being based upon the allegation of the substance of the offense.

There is no charge of duress by threats of other acts to accomplish the alleged results, but only one of advising the said Rasmussen to assert his rights under the Fifth Amendment to the Constitution of the United States of America; that is to say, to refuse to testify because it would compel him to be a witness against himself. The Fifth Amendment covers the issue of privilege against self-incrimination, stating "no person * * * shall be compelled in any criminal case to be a witness against himself."

All persons summoned as witnesses are entitled to this protection; such protection not being restricted to cases wherein there is a criminal prosecution against the witness himself. Counselman v. Hitchcock (1892) 142 U. S. 547, 562, 12 S. Ct. 195, 35 L. Ed. 1110.

Under the above provision of the Constitution, a witness cannot avoid answering the question upon his mere statement that his answer to the question will incriminate him. It is for the judge to determine whether or not his answer will reasonably have such tendency, or whether it will furnish a link in the chain of evidence necessary to convict him. In determining whether or not a witness is entitled to the privilege of silence, the court may look at all circumstances of the case, and determine whether or not there is reasonable ground to apprehend danger to the witness from his being made to testify. Foot v. Buchanan (C. C. 1902) 113 F. 156, 160; Elwell v. U. S. (C. C. A. Ill. 1921) 275 F. 775, certiorari denied (1921) 257 U. S. 647, 42 S. Ct. 56, 66 L. Ed. 415.

The witness, therefore, has no arbitrary right to decide the question of privilege. The only evidence sought to be suppressed could only have been privileged matter; for, if it were not such, there could be no act coming under the charge as worded in this indictment. In the case of Ex parte Irvine (C. C. 1896) 74 F. 954, Circuit Judge Taft, now Chief Justice of the United States Supreme Court, in his decision said as follows: "It is argued by counsel for the respondent that there was evidence before the trial court to show that the privilege was pleaded in bad faith, merely to save the defendants, and not to protect the witnesses from a prosecution of themselves. * * * We do not understand any of the American authorities to go so far as to hold that where, from the evidence and the nature of the question, the court can definitely determine that the question, if answered in a particular way, will form a link in the chain of evidence to establish the commission of a crime by the witness, the court should inquire into the motive of the witness in pleading his privilege."

The witness himself, therefore, is protected in his claim of privilege by being allowed the privilege, irrespective of his motive for claiming the same.

In this case the defendant Herron is charged with influencing, by advising, the witness Rasmussen to claim a lawful privilege, and I do not believe it is the law or the policy of the law to make criminal, no matter what the motive might have been, the advising a witness to do that which was lawful and *would in fact* have protected the witness from disclosing self-incriminating matter.

Demurrer sustained.