**211 A.2d 272.**

CLYDE V. HUMMELL III *vs.* SUPERIOR COURT.

JUNE 23, 1965.

PRESENT: Condon, C. J., Roberts, Paolino, Powers and Joslin, JJ.

ROBERTS, J. This petition for certiorari was brought to

review an order of the superior court pursuant to which the petitioner was sentenced to a term of four months in the adult correctional institutions, having been adjudged in willful contempt upon his refusal to answer a question put to him under direct examination when ordered to do so by the trial justice. Execution of sentence was thereafter stayed by the superior court pending an appeal therefrom to this court by way of certiorari. Upon petition we issued the writ, and pursuant thereto the pertinent portions of the record have been certified to us.

It appears from the record that one Brian B. Sparfven was brought to trial on March 4, 1965 on an indictment charging him with the robbery of Raymond Tiernan on January 18, 1964. It appears further that Antonio Nicoletti, Jr. had also been indicted, being charged therein as an accessory to that offense. The petitioner was called by the state to testify in the Sparfven trial on March 4, and the record discloses that direct examination was continued to March 5, 1965. During the continued examination petitioner was asked by the prosecutor: "Now, Mr. Hummel, at that time, and I'm referring to January 18 of 1964, around 12:30 A.M. in the house of Mr. Nicoletti, wherein Mr. Nicoletti and the defendant Brian Sparfven and yourself were present, whether or not Brian Sparfven in your presence and in the presence of Mr. Nicoletti stated that he attempted to rob one Raymond Tiernan?" The petitioner refused to answer this question, invoking the privilege against self-incrimination under the fifth amendment. The trial justice ordered petitioner to answer, but he again, invoking the privilege, persisted in refusing to answer. The trial justice thereupon adjudged him to be in contempt and ordered him confined to the adult correctional institutions until Monday, March 8, 1965, at which time he was again to be asked to answer the question.

On March 8, 1965 petitioner returned to court, the question was again directed to him, and he again claimed the

privilege. The transcript discloses considerable discussion as to whether an answer to the question would tend to incriminate him. The trial justice finally ordered petitioner to answer the question on the ground that a response thereto would not tend to incriminate him and, petitioner again refusing, the trial justice again adjudged him in contempt. He was released on personal recognizance until March 10, 1965 for the imposition of sentence, and on that day sentence was imposed and execution thereof stayed as hereinbefore stated.

The petitioner in this court argues that to answer the question put to him would in the circumstances result in incriminatory disclosure and, therefore, is within the scope of the privilege. On this basis he contends that it was error to hold him in contempt for his refusal to answer that question. However, an antecedent question was raised by the state when it argued that petitioner, after having been advised of the constitutional privilege to avoid self-incrimination, had voluntarily testified before the grand jury that indicted Sparfven and, by so doing, waived the privilege and was estopped from claiming it in the instant case. This is to argue that one who testifies before a grand jury which indicted another person for a particular crime has thereby waived his right to claim the privilege against self-incrimination when called upon to testify in the course of a subsequent trial of the person so indicted.

Substantial authority supports the proposition that one who testifies before a grand jury does not thereby waive the privilege of refusing to testify in some subsequent proceeding on the ground of self-incrimination. In *In re Neff*, 206 F.2d 149, the court, noting that a grand jury investigation is informative in its nature and is wholly distinct from a judicial trial on an indictment returned, said at page 152: "It necessarily follows that a witness, such as the defendant here, who testified to a matter before the grand jury

did not thereby waive her right to claim her constitutional privilege against self-incrimination as to the same subject matter when called as a witness in the subsequent trial of a person indicted by the grand jury. It has been so held by every appellate court before which the question has come." See *People* v. *Tavernier,* 318 Ill. App. 622; *Duckworth* v. *District Court,* 220 Iowa 1350.

There is, in our opinion, another persuasive reason for holding that no waiver of the privilege resulted from the appearance of this petitioner before the grand jury. The instant record does not disclose whether he was adequately informed as to his right to refuse to testify, nor does it disclose the character of the statement that he made to the grand jury. On this meager evidence an inference that there had been a waiver of a fundamental constitutional right is not warranted. In *Smith* v. *United States,* 337 U. S. 137, the court at page 150 said: "Waiver of constitutional rights, however, is not lightly to be inferred. A witness cannot properly be held after claim to have waived his privilege and consequent immunity upon vague and uncertain evidence." It is now settled that to waive a constitutional right, there must be an intentional relinquishment or abandonment of a known right or privilege and whether particular conduct amounts to a waiver must be determined upon the circumstances in each case. *Johnson* v. *Zerbst,* 304 U. S. 458. The instant record, in our opinion, is barren of circumstances from which we could reasonably infer that this petitioner had intelligently waived his right to claim the privilege by appearing before the grand jury.

We turn to petitioner's contention that a refusal to answer the question under consideration was justified by his invocation of the privilege under the fifth amendment and, therefore, it was error to adjudge him in contempt. The constitutional privilege accords the right to refuse to incriminate oneself, and the privilege extends not only to dis-

closures that would support a conviction but extends also to such disclosures as would constitute a link in a chain of evidence needed to initiate a prosecution. *Malloy* v. *Hogan*, 378 U. S. 1, 11. In that case the court, defining the scope and purpose of the constitutional privilege, quotes rather extensively from *Hoffman* v. *United States*, 341 U. S. 479, a case in which the nature of the obligation of the court to pass upon the validity of a claim of the privilege was examined in considerable detail.

In *Hoffman* the court sought to make clear its concern that a claim of privilege should not impose upon the witness an obligation to make incriminatory disclosures in order to establish the incriminatory nature of a response to the question. The court said at page 486: "However, if the witness, upon interposing his claim, were required to prove the hazard in the sense in which a claim is usually required to be established in court, he would be compelled to surrender the very protection which the privilege is designed to guarantee. To sustain the privilege, it need only be evident from the implications of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result. The trial judge in appraising the claim 'must be governed as much by his personal perception of the peculiarities of the case as by the facts actually in evidence.' "

In our opinion, the language quoted makes clear the duty of the court to refrain from placing upon the witness the burden of establishing the incriminatory nature of responses to the question by making disclosures that in themselves would be incriminatory. As noted in *Hoffman*, the court's appraisal of the claim of privilege must be controlled in substantial part by its own perception of the peculiarities of the case. This constitutes a limitation as to the extent of the inquiry that the trial court properly may make on the issue. In short, the court is required to exercise its

fact-finding power as much on the basis of inferences that may be drawn from the circumstances that the question posits as from the direct statements of the witness. If the circumstances to which the question relates in themselves are susceptible of a reasonable inference that would tend to incriminate the witness, it is the duty of the trial judge to give full weight to this inference when determining whether the privilege was properly invoked.

After scrutinizing the transcript closely, we are unable to escape the conclusion that the trial justice sought to elicit information concerning the incriminatory character of a response to the question which, if it had been supplied, would have defeated the protection that the constitutional guarantee purports to extend. We are persuaded that the nature of the question and the situation to which it might refer were such that the witness, if required to establish that it tended to incriminate him, would of necessity have to disclose his relationship with the accused at a time and in circumstances that clearly would have a tendency to connect him with the robbery.

In the indictment Sparfven is charged with having robbed Tiernan on January 18. 1964 and Nicoletti is charged with being an accessory thereto. The question inquires whether petitioner at about 12:30 a.m. on January 18, 1964, that is, within a few minutes of the time when the alleged robbery must have occurred, talked with Nicoletti and Sparfven, the accused, in the house of Nicoletti, concerning the robbery of Tiernan. We are unable to perceive that petitioner could have satisfied the inquiries of the court concerning the conversation which the question posits without disclosing that he had been in the company of the accused within minutes of the commission of the alleged crime discussing its perpetration with them. It is our opinion that to require petitioner to make a direct disclosure concerning such conversation would defeat the purpose which the constitutional privilege is designed to afford.

We are of the further opinion that the pertinent inference of necessity negatives the ability of the court to be " 'perfectly clear, from a careful consideration of all the circumstances in the case, that the witness is mistaken, and that the answer[s] *cannot possibly* have such tendency' to incriminate." *Hoffman* v. *United States, supra,* at page 488. In the face of the reasonable inference to which we above refer, the court could not find that a response to the question under consideration "cannot possibly" tend to incriminate this petitioner.

It is then our opinion that the petitioner was entitled to avail himself of the constitutional privilege against self-incrimination and could not properly be compelled to answer the question here under consideration. We are, therefore, constrained to conclude that the superior court erred in adjudging the petitioner in contempt and was without jurisdiction to order him incarcerated at the adult correctional institutions.

The petition for certiorari is granted, the order of the trial justice adjudging the petitioner in contempt is hereby quashed, and the record certified to this court is ordered returned to the superior court with our decision endorsed thereon.

*Herbert Katz,* for petitioner.

*J. Joseph Nugent,* Attorney General, *Corinne P. Grande,* Special Counsel, for respondent.