341 A.2d 729.

STATE *vs.* LUCILLE HASNEY.

JULY 28, 1975.

PRESENT: Roberts, C. J., Paolino, Joslin, Kelleher and Doris, JJ.

PAOLINO, J. This is an appeal from a 3-month sentence for willful contempt arising out of the defendant's refusal to testify, when ordered to do so by a justice of the Superior Court. She based such refusal on the ground that her testimony might tend to incriminate her in violation of her rights under art. V of the amendments to the Constitution of the United States not to be compelled in any criminal case to be a witness against herself. The trial justice stayed execution of the sentence pending determination of the defendant's appeal to this court.

The record discloses the following pertinent facts. In 1970, defendant testified as a witness for the state in a criminal matter before a justice of the Superior Court and a jury concerning certain conversations which she had allegedly overheard. The trial resulted in a jury disagreement and a second trial. Prior to the second trial defend-

ant in this proceeding advised counsel for the state that she no longer wished to testify and if called would recant her earlier testimony or invoke her fifth amendment privilege against self-incrimination.

On May 22, 1972, defendant was called as a witness in the retrial of the case. She refused to answer any and all questions put to her by counsel for the state, even though ordered to do so by the trial justice. She invoked the fifth amendment privilege against self-incrimination for her refusal in each instance and in each instance the trial justice ruled she was not entitled to the privilege. Further, she requested that she be granted immunity by the court prior to testifying, but that motion was denied. The defendant was then adjudged in contempt and sentenced to 3 months at the Adult Correctional Institutions.

## I

The first question raised by this appeal is whether defendant was entitled to invoke the fifth amendment privilege against self-incrimination in the circumstances of this case.

Before discussing the issues raised by defendant in this proceeding, it may be well to discuss briefly the applicable law under cases decided by this court. As we pointed out in *Hummell* v. *Superior Court,* 100 R. I. 54, 58-60, 211 A.2d 272, 274-75 (1965), the fifth amendment privilege accords the right to refuse to incriminate oneself, and the privilege extends not only to disclosures that would support a conviction but extends also to such disclosures as would constitute a link in a chain of evidence needed to initiate a prosecution.[1] In discussing the nature of the obligation of the court to pass upon the validity of a claim of the privilege, we quoted the following language from *Hoffman* v. *United States,* 341 U.S. 479, 486-87, 71 S.Ct.

---

[1] *See Malloy* v. *Hogan,* 378 U. S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964).

814, 818, 95 L.Ed. 1118, 1124 (1951), showing that Court's feeling that a claim of privilege should not impose an obligation upon a witness to make incriminatory disclosures in order to establish the incriminatory nature of a response to the question:

> "However, if the witness, upon interposing his claim, were required to prove the hazard in the sense in which a claim is usually required to be established in court, he would be compelled to surrender the very protection which the privilege is designed to guarantee. To sustain the privilege, it need only be evident from the implications of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result. The trial judge in appraising the claim 'must be governed as much by his personal perception of the peculiarities of the case as by the facts actually in evidence.'"

In commenting on the quoted language, we pointed out that it makes clear the duty of the court to refrain from placing upon the witness the burden of establishing the incriminatory nature of responses to the question by making disclosures that in themselves would be incriminatory. After noting that the admonition in *Hoffman* constitutes a limitation as to the extent of the inquiry that the trial court may make on the issue, we said in *Hummell* v. *Superior Court, supra* at 59-60, 211 A.2d at 275:

> "In short, the court is required to exercise its factfinding power as much on the basis of inferences that may be drawn from the circumstances that the question posits as from the direct statements of the witness. If the circumstances to which the question relates in themselves are susceptible of a reasonable inference that would tend to incriminate the witness, it is the duty of the trial judge to give full weight to this inference when determining whether the privilege was properly invoked."

Thus, while a witness may properly refuse to answer

where the answer would disclose the witness' involvement in a criminal transaction, *Hummell* v. *Superior Court, supra,* and even though this provision of the fifth amendment must be accorded liberal construction in favor of the right it was intended to secure, *Arndstein* v. *McCarthy,* 254 U.S. 71, 72-73, 41 S.Ct. 26, 65 L.Ed. 138, 142 (1920); *Counselman* v. *Hitchcock,* 142 U.S. 547, 562, 12 S.Ct. 195, 198, 35 L.Ed. 1110, 1114 (1892), a witness will not be excused from answering questions on the ground that the answers would incriminate the witness where the questions do not show that such a result would be possible, *Rosendale* v. *McNulty,* 23 R. I. 465, 50 A. 850 (1902). As this court said many years ago in *In re Werner,* 46 R. I. 1, 5, 124 A. 195, 196 (1924), a witness cannot avoid answering questions upon his mere assertion that his answers to them will tend to incriminate him, since it is for the court to decide whether his answer will reasonably have such a tendency, or whether it will furnish an element or link in the chain of evidence necessary to convict him. *See also Turgeon* v. *Turgeon,* 91 R. I. 433, 164 A.2d 699 (1960).

We address ourselves now to the nature of the questions put to defendant and the setting in which they were asked. As we have previously indicated, the setting in which the questions were asked was the retrial of a criminal case in which defendant had testified some years earlier and which resulted in a jury disagreement. The case involved the alleged killing of defendant's father. The defendant refused to answer any questions at all. The questions asked related to the fact that defendant had testified as a state's witness in the prior trial, her then address, her relationship to the deceased murder victim (her father), the address of the deceased at the time of his death, whether any children of the deceased lived with him prior to his death, where her late father did his grocery shopping,

whether she was ever present at meetings between her father and the defendant in the case then being tried, and a number of similar matters. In each instance defendant refused to answer on fifth amendment grounds and in each instance the trial justice ruled against her and ordered her to answer on the ground that he was satisfied that she had failed to establish entitlement to the privilege.

The defendant argues here, as she did in the Superior Court, that answers to the questions put to her could possibly have formed links in a chain which could ultimately have incriminated her in the offenses of gambling and/or perjury. In the circumstances, defendant argues, the trial justice erred in denying her the fifth amendment privilege and in ordering her to answer.

It is obvious from the trial justice's rulings that he was satisfied that the withheld answers would not reasonably have a tendency to incriminate defendant, or furnish an element or link in the chain of evidence necessary to convict her of any crime. *In re Werner, supra* at 5, 124 A. at 196. After carefully examining the questions asked, in the context of the setting in which they were asked and keeping in mind that this provision of the fifth amendment must be accorded liberal construction in favor of the right it was intended to secure, we are not persuaded that the trial justice erred in ruling as he did. We fail to see how, in the circumstances of this case, it can reasonably be said that it is evident from the implications of the questions, in the setting in which they were asked, that a responsive answer to the questions or an explanation of why they cannot be answered might have a reasonable tendency to incriminate defendant, or to furnish a link in a chain of evidence necessary to convict her of any crime.

## II

The defendant's next contention is that she was entitled to immunity or to a privilege prohibiting the use

of her compelled testimony. She conceded during oral argument here that she was not entitled to the statutory immunity provided in G. L. 1956 (1969 Reenactment) §12-17-15, as enacted by P. L. 1969, ch. 54, §1. However, citing *State* v. *DeCola*, 33 N.J. 335, 164 A.2d 729 (1960), she argues that the trial justice, in the exercise of the court's inherent power, should have immunized her from the use of her compelled testimony in any charge of perjury in her prior testimony during the first trial. She refers to this immunity as common-law immunity and cites certain New York cases which she states have given recognition to this form of immunity.[2]

In view of the trial justice's determination that the questions put to the defendant would not incriminate her, we do not reach and therefore need not decide this issue at this time. But even if we assume without deciding that the trial court has inherent power in a proper case to immunize a witness from the use of compelled testimony in a charge involving perjury in a prior hearing, the defendant in this case will gain nothing in view of the trial justice's finding that the withheld answers would not incriminate the defendant in any way. Since the trial justice determined that the withheld answers would in no way incriminate the defendant, there was no need to immunize her as suggested by the defendant.

For the reasons stated, the defendant's appeal is denied and dismissed.

*Julius C. Michaelson*, Attorney General, *Judith Romney Wegner*, Special Asst. Attorney General, for plaintiff.

*John F. Cicilline, Bevilacqua & Cicilline*, for defendant.

---

[2]*See People* v. *Laino,* 10 N.Y.2d 161, 176 N.E.2d 571, 218 N.Y.S.2d 647 (1961); *People* v. *Steuding,* 6 N.Y.2d 214, 160 N.E.2d 468, 189 N.Y.S.2d 166 (1959); *People* v. *Gillette,* 126 App. Div. 665, 111 N.Y.S. 133 (1908).