In the Matter of HARRY WEINER, Petitioner.
COMMISSIONER OF INVESTIGATION OF THE CITY OF NEW YORK, Respondent.

Supreme Court, Special Term, Kings County, April 20, 1944.

*Harry Gittleson* for petitioner.

*Ignatius M. Wilkinson, Corporation Counsel (Morris Shapiro* of counsel), for respondent.

SMITH, J. Petitioner, the owner of an ambulance and oxygen service in the borough of Brooklyn, city of New York, moves herein to quash a subpœna and a subpœna duces tecum issued by the Commissioner of Investigation of the City of New York, which directs petitioner to appear and to bring with him his books of account showing records '' concerning the selection, hiring and use of ambulances and ambulance service for transportation of patients into city hospitals.''

The facts as they appear relevant are as follows: On March 20, 1944, pursuant to section 803 of the New York City Charter, the Commissioner of Investigation was directed by the Mayor of the City of New York to conduct an investigation into matters relating, but not limited, to the affairs, functions, accounts, methods, personnel and efficiency of the Department of Hospitals of the City of New York, with respect to the admittance of patients into City hospitals. The testimony thus far elicited in the investigation has disclosed that there is reasonable ground to believe that admitting physicians at the Queens General

Hospital are guilty of official misconduct, consisting of recommending to prospective patients or their families the use of private ambulance service, and specifically that of the petitioner, for the transportation of prospective patients to the hospital. Allegedly, these admitting physicians are receiving a share or " cut " of the charge made by the petitioner for the use of his ambulance service, namely, 20% of a charge of fifteen dollars. The Commissioner of Investigation also points out that numerous instances have been developed in the course of the investigation indicating telephone calls by admitting physicians to the petitioner's office and immediately thereafter telephone calls to the prospective patients who were subsequently admitted to the Queens General Hospital. In a corroborating affidavit submitted in opposition to petitioner's application, Larry M. Vetrano, one of the Examiners of Accounts in the office of the Department of Investigation, alleges that on March 30, 1944, he questioned a Dr. Samuel I. Ginsberg, one of the aforementioned admitting physicians, under oath, and that the latter admitted arranging transportation for prospective patients and making telephone calls both to the petitioner and the patient; also that off the record the doctor admitted receipt of gratuities but stated he would be obliged to deny such fact when examined under oath because of the implications and consequences which would follow. The Examiner, Vetrano, also alleges that on March 31, 1944, he examined one Dr. Natale S. Scozzaro and that the latter testified to the same state of facts, namely, arranging with the petitioner for the use of his private ambulance service and the recommendation of such service to prospective patients seeking admission to the Queens General Hospital. At the completion of the examination and when the stenographer had been dismissed, Dr. Scozzaro allegedly stated: " Look at all the trouble I am getting into for a couple of dollars." The Commissioner of Investigation urges that it is essential to the investigation, in view of the sworn denials by these doctors, that petitioner be required to produce his books and records and be examined under oath concerning payment of gratuities, if any, made by him to the aforementioned admitting physicians for the recommendation of his ambulance service to prospective patients entering the Queens General Hospital. The Commissioner also asserts that the examination sought herein is vital to determine whether the methods and functions of the Department of Hospitals can be improved and whether patients are being requested or required to use specific private ambulance services for profit or gain of City employees in preference to the use of City ambulance service.

In addition to denying the charges made by the Commissioner of Investigation, petitioner challenges the validity of the subpœnas issued by the Commissioner contending privilege and the right to protect himself against, self-incrimination. An examination of the pertinent authorities, however, reveals that there is no force in this contention. The right to protect one's self against self-incrimination cannot be asserted in advance of questions actually propounded on the examination or hearing. (*Matter of Wilman Agency,* 178 Misc. 549, affd. 264 App. Div. 850.) There the court at Special Term said: "The charge that compliance with the subpœnas might require the petitioners to incriminate themselves and that, in consequence, an infringement of constitutional prerogative is threatened, cannot be sustained on this application because of prematurity. Invariably when needed the courts have declared that the privilege against self-incrimination cannot be asserted in advance of questions actually propounded on the examination or hearing. (*Matter of Levy,* 255 N. Y. 223.) "

Another point is the subject of much emphasis in the argument by counsel for the petitioner. It is his contention that while section 805 of the New York City Charter (1938) gives the Commissioner the right to require the attendance of witnesses, it grants him no power to subpœna documents. That very same question was raised with respect to the authority of the Commissioner of Accounts under the old Greater New York Charter in *Matter of Hirshfield* v. *Craig* (239 N. Y. 98, revg. *Matter of Hirshfield* v. *Rinn,* 209 App. Div. 555). There the Appellate Division, First Department, had held that the Commissioner of- Accounts was not vested with authority to subpœna books and papers in light of the fact that the statute, section 119 of the old Greater New York Charter (L. 1901, ch. 466, as amd.), did not expressly confer any such power upon the Commissioner. The Court of Appeals reversed the Appellate Division and held that under section 406 of the Civil Practice Act the Commissioner had clear authority in a proper case to require the production of books and papers. The court stated: "Section 406 of the Civil Practice Act prescribes in subdivision 1 that where a ' person, * * * has been heretofore or is hereafter expressly authorized by law to hear, try or determine a matter, *or to do any other act in an official capacity, in relation to which proof may be taken, or the attendance of a person as a witness may be required,*' a subpœna may be issued ' requiring the person to attend; *and also, in a proper case, to bring with him a book or a paper.*' We find in the parts

of the section which we have italicised clear authority for the issuance of a subpœna *duces tecum* by the Commissioner of Accounts. This authority is, however, limited. It may issue only in a proper case, and it may require the witness to bring only a book or paper." (239 N. Y. 98, 117.)

Similarly, in *Matter of Edge Ho Holding Corp.* (256 N. Y. 374) the respondent sought to vacate a subpœna duces tecum issued by the Commissioner of Accounts of the City of New York and there the Court of Appeals again upheld the power of the Commissioner to issue the subpœna in question. Significantly, the court stated (at p. 380): " The argument is made that the witnesses are not employees of the city nor even claimants for an award, but merely former owners, and that they are exempt from a duty to make disclosure of their own affairs. We have held that the Commissioner's power to inquire is not limited to witnesses in the service of the city, and that there is no privilege of silence when reticence, if tolerated, would thwart the public good (*Matter of Hirshfield* v. *Hanley*, 228 N. Y. 346)."

It would seem to me, therefore, that the facts alluded to above clearly indicate that the inquiry by the Commissioner of Investigation relates to the affairs of the City of New York and that a reasonable basis exists to compel the appearance and testimony of the petitioner to further such inquiry.

The motion to quash the subpœna and subpœna duces tecum is accordingly denied.