Foster, J.
Defendant was convicted after a non jury[1] trial at an Extraordinary Special and Trial Term of the Supreme Court, County of Oneida, of three counts of income tax evasion, in violation of sections 376 (subd. 4) and 386-j of the Tax Law of the State of New York. A sentence of nine months’ imprisonment in Oneida County Jail was imposed on each count, the terms of imprisonment to run concurrently. The Appellate Division, Fourth Department, has unanimously affirmed the judgment of conviction, and defendant appeals pursuant to a certificate of a Judge of this court.
Defendant, questioning the validity of the underlying indictment, contends (1) that his privilege against self incrimination was violated, when, as a prospective defendant or target of the Extraordinary Grand Jury investigation, he testified before that *164 body pursuant to subpoena (People v. Steuding, 6 N Y 2d 214), and (2) that immunity from prosecution had been conferred upon him as to any transaction, matter or thing revealed by his testimony.
In June, 1958 a Special Assistant Attorney-General was appointed to conduct an investigation into various criminal enterprises in the County of Oneida. On September 25, 1958 the Department of Audit and Control of the State of New York (Division of Municipal Affairs) forwarded to the Special Prosecutor a report of the examination of the accounts and fiscal affairs of the City of Utica, County of Oneida, covering the period from January 1, 1954 through December 31, 1957. That report indicated that during the years in question, though “Purchases of such items, in each year, were considerably in excess of the $500 limitation ”, competitive bids were not obtained by the City of Utica in connection with the purchase of fuel oil, gasoline, tires and tubes (Second Class Cities Law, § 120). The foregoing report had been printed in the Utica Observer-Dispatch on September 24, 1958, and the contents thereof were a matter of record.
Thereafter, the Governor, in October, 1958, appointed an Extraordinary Special and Trial Term of the Supreme Court to preside over matters arising out of the investigation, and by executive order authorized the Special Assistant Attorney-General to attend an Extraordinary Grand Jury, to inquire into, inter alia, prostitution, gambling and official corruption in the County of Oneida.
Because of the apparent disregard of competitive bidding requirements, the Grand Jury desired to ascertain whether or not there had been any conspiracy or official corruption involved in the purchase of tires and other supplies by the City of Utica. On March 24, 1959 defendant, a partner in Laino-Fisk Tire Service, one of two principal vendors of tires to the City of Utica, was served with a subpoena duces tecum, requiring that lie appear before the Grand Jury on March 31, 1959, and that he bring ‘ ‘ All books and records, including but not limited to, cash receipts and disbursement books, sales records, purchase records, cancelled checks and bank statements, etc., for the period January 1, 1957 to date”. Pursuant to subpoena served on March 19, 1959, defendant Laino had appeared with counsel *165 at the Attorney-General’s office on March 24, 1959, at which time he affirmatively had asserted his privilege against self incrimination as to various of his business records. All records were returned to him at that time.
Upon defendant’s appearance before the Grand Jury on March 31, 1959, the following colloquy occurred:
‘ ‘ A. Before we start here, I brought my books consistent with the subpoena. I refuse to hand over my records as advised by counsel, unless I get full and complete immunity, not only as to my books, but as to each and every question. That’s on the record.
Q. That was taken down, of course, by the stenographer here present. Is there anything else you would like to state presently in that connection? Is there anything else your counsel would like to have you put on the record? A. Yes, one more thing. Before I testify for the purpose of the record, my counsel has advised me to request the following information from this body: Am I a defendant?
Q. All right. I’ll answer that first. Mr. Laino, you are not a defendant presently before this Grand Jury.
A. All right. And if I am not a defendant and I am a prospective witness, if I am a witness, what is the subject of the inquiry, what persons are involved and what charges are made against these persons?
Q. The second question you asked, as I understand it, was if you are a witness, what is the subject of the inquiry. The subject of the inquiry, Mr. Laino, is the nature of the tire purchases undertaken by the city from your partnership, and this Grand Jury seeks to obtain the records presently, as %ve understand it, in your custody to determine the nature of the purchases, the amount and whether or not, under the Governor’s order impanelling this Grand Jury, there is any official corruption m that regard. Now, after you asked the subject of the inquiry, you asked something else. You said something— A. What persons are involved and wrhat charges are made against these persons?
Q. There are no present charges against any particular person in this regard. No charges would be made *166 unless it appeared that there is a violation of the law. That is what the Grand Jury is seeking to determine.
Is there anything else? A. I am to understand that I am going to be granted full ancl complete immunity?
Q. You, of course, Mr. Laino, have to understand whatever your counsel tells you. I am going to tell you this: You are not permitted under the law to demand immunity from a Grand Jury. If you feel that any testimony that you might give before the Grand Jury might tend to incriminate you, you are then entitled to claim that privilege. Is that clear to you? A. Clear.
Q. Now if you claim that privilege, Mr. Laino, yon must state that you claim your privilege not to testify on the ground that the answers that you might give might tend to incriminate you. Do you understand that, sir? A. I understa/nd.
Q. Now the Grand Jury, of course, cannot grant you immunity — blanket immunity, unless you do claim your privilege. A. I want complete immunity on each and every question I am going to answer.
Q. I must therefore direct questions to you, you see, and if you claim your privilege not to testify—
A. (Interposing) I will ask for immumty.
Q. It isn’t a matter of just asking for immunity. You have to claim the privilege on the ground that your answer may tend to incriminate you. A. Okay.
Q. Then, Mr. Laino, to make sure that you understand, 1 am going to ask you questions that I feel are appropriate to the inquiry here before the Grand Jury.

If you claim your privilege—if you feel that you should claim your privilege, then you do so. All right, sir?

A. Yes.” (Emphasis supplied.)
Defendant then was interrogated concerning the operation of his tire business, and Ms books and records of sales made to various purchasers including the City of Utica. He did not interpose his privilege at any time. He testified, of course, that he was a partner in the Laino-Fisk Tire Service, and that the partnership in the past had sold tires to the City of Utica. Pursuant to the subpoena, defendant produced a control ledger, cancelled checks, bills, statements, purchase orders from the *167 City of Utica, and sales slips. These records, however, with the exception of the control ledger and the cancelled checks, dealt with a period subsequent to June 30, 1958, and were not used in any way in the obtaining of the indictment for tax evasion.[2]
The control ledger, on the other hand, contained a 11 purchase-journal ” which disclosed the name of the accountant used by the Laino-Fisk Tire Service during the period covered by the indictment, and the cancelled checks indicated payments to the accountant for his services. The control ledger also revealed in the “ cash receipts book ” that Laino-Fisk, during the period covered by the indictment, had been dealing extensively with the City of Utica. When questioned concerning the whereabouts of various other of his business records, defendant disclosed that they were possessed by his accountant, Bill Stillman. Prior to the introduction of the records into evidence, defendant again carefully and fairly was advised of his privilege against self incrimination, but failed to avail himself thereof, and his books and records were received.
Subsequently, on April 1, 1959, defendant’s accountant, William Stillman, was served with a subpoena for appearance before the Office of the Oneida County Investigation (Attorney-General’s Office). On April 2, 1959 Stillman appeared and testified. He then was served with a subpoena duces tecum, returnable before the Oneida County Investigation on April 7, 1959, requiring that he furnish copies of the income tax returns of the Laino-Fisk Tire Service for the years 1956, 1957 and 1958, and his work sheets for the period January 1,1957 to date, for the Laino-Fisk Tire Service. On the same date, April 2, 1959, defendant also was served with a subpoena duces tecum to bring with him to the Attorney-General’s Office on April 7 the 1 ‘ Accounts Receivable Ledger and Accounts Payable Ledger for the period January 1, 1957 to date ” of the Laino-Fisk Tire Service, these being the records which defendant had not produced before the Grand Jury on March 31. Prior to the return date of the subpoena, William Stillman, by telephone, requested permission to bring with him those records required of defendant to obviate the necessity of an actual appearance by defend- *168 ¿ml. The Attorney G on oral’s Office acceded, to that request. On April 7, 1959 Stillman appeared at the Attorney-General’s Office and furnished the records demanded of both himself and defendant.
The Laino-Fisk ‘1 accounts receivable ledger ’ ’ furnished by Stillman, on behalf of defendant, admittedly confirmed the apparent personal appropriation of partnership checks by Frank Laino of city checks payable to the partnership and thereby furnished an important link or lead to defendant’s acts of tax evasion. The ledger contained a separate sheet for each customer to whom charge sales were made, and the date and amount of each sales invoice. Upon payment, a notation was made on the credit side of the sheet showing the dates and amounts of each payment. The significance of the ledger later was explained to the Grand Jury.
The City Purchasing Agent and the City Treasurer, pursuant to subpoena, had furnished the Attorney-General and the Grand Jury with the cancelled checks given in payment to Laino-Fisk, and the purchase orders for the period in question.
The markings on the backs of the checks, and the bank deposit slips, indicated that many were being cashed by defendant personally and that they were being deposited in his personal account. These items were unreported in defendant’s income tax returns. The city’s purchase orders were compared with the accounts receivable ledger and it became apparent that the ledger did not reflect the total amount of actual sales. In addition, other city checks were credited to various other purchasers in the accounts receivable ledger. When those purchasers were subpoenaed with their records to appear at the office of the Attorney-General, it was disclosed that they had paid in cash for tires. These amounts also never were reported in the tax returns of the partnership or the individual return of defendant.
Thus the Laino-Fisk books and records, particularly the accounts receivable ledger, furnished by defendant pursuant to subpoena, through the accountant Stillman, were instrumental in the return of the tax evasion indictment. Defendant, of course, had furnished the Grand Jury with the name of the accountant who ultimately produced the tax returns and work sheets for the period involved. He also had acknowledged that, as a partner of Laino-Fisk, he frequently had sold tires to the city in the *169 past, and Ms books and records demonstrated Ms extensive dealings with the city during the period covered by the indictment.
Originally, the powers of the Extraordinary Term for the County of Oneida, and hence the Grand Jury thereof, extended only to matters of prostitution, gambling, and public corruption, but on June 18, 1959 Governor Rockefeller signed a further order extending the powers of the Extraordinary Term to include violations of the Tax Law of the State of New York. On June 23 the within matter was presented to the Grand Jury, and on July 1 the indictment was returned.
Thereafter, defendant moved in the Appellate Division, Fourth Department (Judiciary Law, § 149, subd. 2) for an inspection of the Grand Jury minutes, and a dismissal of the indictment on the grounds (1) that his constitutional rights, as a prospective defendant, had been violated, and (2) that he had been granted immunity by the Grand Jury. Inspection was granted, but the motion for dismissal was denied. After inspection, a renewed motion for dismissal was denied.
On the trial before the Extraordinary Term, defendant renewed the motion to dismiss at the opening, at the close of the People’s case, and at the close of all of the evidence. He did not actively participate in the trial, did not cross-examine, and offered no evidence. The motions for dismissal eventually were denied and the judgment of conviction was affirmed, as stated, by the Appellate Division.
The status of the appellant clearly was that of a prospective defendant when he was subpoenaed, and when he testified and produced documentary evidence before the Grand Jury and the office of the Attorney-General. At that time the Special Prosecutor and the Grand Jury were aware that tires in an amount in excess of $25,000 had been purchased by the City of Utica for each of the fiscal years 1954 through 1957, without competitive bidding as required by statute (Second Class Cities Law, § 120). The Grand Jury concededly Avas investigating whether or not there had been any conspiracy or official corruption involved in the making of such purchases by the city, and was attempting to establish a pattern of the relationship of the vendors to the City of Utica and its officials. Under these circumstances, then, defendant, a partner in Laino-Fisk Tire Service, one of the *170 principal vendors of tires to the City of Utica, was subpoenaed by the Investigation and the Grand Jury. Indeed when defendant questioned his status and the subject of the inquiry before the Grand Jury, he was informed that he was not presently a defendant, and that the investigation concerned “ the nature of the tire purchases undertaken by the city from your partnership,” to determine whether or not “there is any official corruption in that regard.”
The Special Assistant Attorney-General contends that defendant was merely a witness, and that the inquiry obviously was directed against possibly corrupt “ public offices and officers.” We cannot agree with that proposition. Similar contentions were made and rejected in People v. Steuding (6 N Y 2d 214, supra) and People v. De Feo (284 App. Div. 622, revd. on other grounds 308 N. Y. 595).
In People v. De Feo (284 App. Div. 622, 627, supra) it was said: “ Whether De Feo was a prospective defendant is not to be determined by a subjective examination of the mind of the prosecutor. The scope of the inquiry made Be Feo a possible defendant * * *. In this instance, the record is clear, De Feo was on the target even if perchance he was not to be the bull's eye ” (emphasis supplied). The analysis of the Appellate Division regarding De Feo’s status was adopted by this court. We found that De Feo was “ unquestionably cast in the role of a prospective defendant ” on the record therein involved and that “ the witness was being interrogated as to transactions and matters of such a nature that the prosecutor must have Imown in advance that he was placing the witness in the role of a prospective defendant ” (308 N. Y. 595, 603-604, opinion per Dye, J.; emphasis supplied; see, also, People v. Freistadt, 6 AD 2d 1053).
In People v. Steuding (6 N Y 2d 214, supra) an employee of a company which sold road oils to various Highway Superintendents in the County of Ulster was deemed a prospective defendant, or a target of an investigation into corruption of ‘ ‘ public officers ” in that county, at the time he was subpoenaed before the Grand Jury.
As a prospective defendant, then, this defendant, together with his books and records, was subpoenaed before the Investigation and the Grand Jury, and examined in relation to his own *171 conduct. In such a case the subpoena is deemed to be a form of compulsion, and the testimony thus compelled may not be used against the defendant as the basis of an indictment, or for any other purpose. This interpretation of our State constitutional privilege against self incrimination is well established and is no longer open to question. (N. Y. Const., art. I, § 6; People v. Steuding, supra; People v. De Feo, supra; People v. Ferola, 215 N. Y. 285; People v. Freistadt, 6 A D 2d 1053, supra; People v. Gillette, 126 App. Div. 665, 668; People v. Seaman, 174 Misc. 792; People v. Rauch, 140 Misc. 691; People v. Baumer, 136 Misc. 17; People v. Bermel, 71 Misc. 356.)
Here, of course, we are presented with a variation of the usual situation, for the resulting indictment concerned a crime very different from that under investigation when defendant was subpoenaed. Thus, upon an extensive inquiry into the business records of defendant and his partnership to ascertain their part in a possible conspiracy in sales of tires to the city, links and leads tending to establish and confirm the tax frauds were discovered. The powers of the Extraordinary Term then were extended to cover violations of the State Tax Law. The Attorney-General, therefore, argues with some logic that, when defendant and his books were subpoenaed before the Investigation and the Grand Jury, defendant was not a prospective defendant in a tax fraud inquiry, and that his privilege against self incrimination was not violated in the absence of an affirmative assertion thereof.
This argument, however, does not obviate the fact that the testimony and records (cf. People ex rel. Kenny v. Adams, 292 N. Y. 65) were taken from the defendant in violation of his constitutional privilege in the first instance, for we are concerned with his status as it was, in relation to the subject under inquiry, at the time he was compelled to testify against himself. In People v. Steuding (6 N Y 2d 214, 216-217, supra) we said: “ By virtue of the Constitution of this State (art. I, § 6) —and it is solely the Constitution of New York with which we are now concerned — a prospective defendant or one who is a target of an investigation may not be called and examined before a Grand Jury and, if he is, his constitutionally-conferred privilege against self incrimination is deemed violated even though he does not claim or assert the privilege. * * * An automatic result of *172 the violation of this constitutional privilege is that the defendant is protected, not only from indictment based on any incriminating testimony which he may have given, but also from use of such evidence. And the right and protection thus accorded by the Constitution may not be taken away or cut down by statute” (emphasis supplied).
In short, having violated the constitutional privilege of this defendant, the Attorney-General and the Grand Jury could not use the evidence thus obtained, in whole or in part, to support an indictment for any crime revealed thereby. The constitutional privilege against self incrimination is not limited to particular crimes. Here, the privilege was violated, it is true, because defendant was compelled to give testimony concerning his part in a possible conspiracy of corruption in the sale of tires to the city, but that testimony was none the less tarnished because it subsequently was used, at least in part, to support an indictment for a different crime. The violation of the privilege occurred when the testimony and records were given under compulsion of subpoena (People v. Gillette, 126 App. Div. 665, 667-670, supra; People v. Ferola, 215 N. Y. 285, 289-290, supra; People v. Seaman, 174 Misc. 792, 795, supra) and their subsequent use against defendant in a criminal prosecution of any kind was prohibited (People v. Steuding, supra).
But defendant, merely by testifying, did not receive automatic immunity for all time, as to “ any transaction, matter or thing ” revealed by him, as he would have prior to the enactment of section 2447 of the Penal Law (L. 1953, ch. 891, eff. Sept. 1,1953). Prior to section 2447, of course, in a conspiracy or bribery case, the applicable statutes (Penal Law, §§ 380, 381, 584) provided for such automatic immunity (People v. De Feo, supra; People ex rel. Coyle v. Truesdell, 259 App. Div. 282) unless the witness executed a written waiver (Penal Law, § 2446). To avoid the inadvertent conferring of immunity upon witnesses unsuspected of the wrongdoing they themselves ultimately disclosed, section 2447 was enacted. Briefly summarized, it provides that in order to obtain complete immunity a witness (including a prospective defendant) must (1) affirmatively claim his privilege against self incrimination, (2) be directed or ordered to answer by competent authority, for instance, a Grand Jury at the request of the prosecutor, and (3) testify (People v. De Feo, 308 N. Y. 595, 602-604, supra).
*173 We have held, o£ course, that this statute does not alter the rule forbidding the compulsion by subpoena of the testimony of a target of a Grand Jury investigation, even where he fails affirmatively to assert his privilege. Such testimony, whether or not the prospective defendant is advised of his privilege before the Grand Jury, still is regarded as compelled, and violative of our Constitution (People v. Steuding, supra; People v. De Feo, supra; People v. Freistadt, supra). “A violation of the constitutional privilege carries with it a dismissal of the indictment returned by the Grand Jury before which the defendant testified ” (People v. Steuding, supra, p. 217).
This, however, is a different thing entirely from complete immunity, and reindictment is possible if sufficient evidence, independent of the evidence, links, or leads furnished by the prospective defendant, is adduced to support it (People v. Freistadt, supra; People ex. rel. Coyle v. Truesdell, 259 App. Div. 282, 285, supra; People v. Bermel, 71 Misc. 356, supra; People v. Singer, 18 Abb. N. C. 96; People v. De Feo, 284 App. Div. 622, 626, revd. on other grounds 308 N. Y. 595, supra; see, also, Matter of Ryan v. Supreme Ct., 7 N Y 2d 989, and People v. Ryan, 11 A D 2d 155, upholding reindictment of defendant involved in People v. Steuding, supra, and People v. Ryan, 12 A D 2d 841, affg. conviction, upon reindictment, of defendant in People v. Steuding). Complete immunity from prosecution may be obtained by a prospective defendant, or any witness, only by strict compliance with the procedural requirements of our immunity statutes properly enacted (Matter of Doyle, 257 N. Y. 244, 257-268, opinion by Cardozo, Ch. J.), or by virtue of immunity provisions in our State Constitution (e.g., art. XIII, §3).
The issue remaining open, then, is whether or not this defendant obtained complete immunity as to any matter, transaction or thing revealed by him as a witness before the Grand Jury in accordance with the procedural requirements of section 2447 of the Penal Law. WThen he first appeared before the Grand Jury, the defendant in no uncertain terms demanded complete immunity prior to answering any questions. He properly was told that in order to obtain immunity under the statute he would have to refuse to answer a particular question, asserting his privilege against self incrimination, and then answer the ques *174 tion propounded if ordered to do so by the Grand Jury (People v. De Feo, supra). Defendant then proceeded to testify and never actually interposed his privilege. At no time was he directed or ordered by the Grand Jury to answer a particular question, for at no time did he refuse to answer. Technically, then, the requirements of section 2447 were not met, notwithstanding that the defendant made his position clear, for it is well settled that the privilege against self incrimination may not be asserted or claimed in advance of questions actually propounded (King v. Liotti, 190 Misc. 652, 672; Matter of Weiner, 183 Misc. 267; Radin v. Kornreich, 17 Misc 2d 860; People v. Ryan, 6 N Y 2d 975, 977, dissenting opinion, Burke, J.). When the records wrere being introduced, the Special Assistant Attorney-General specifically asked defendant if he chose to interpose his privilege as to any, and defendant replied “ Keep everything you got.” The damaging “ accounts receivable ledger ” subsequently was delivered pursuant to subpoena, without objection by defendant. As indicated, however, under the Steuding principle, the judgment of conviction should be reversed and the indictment dismissed.
The judgment appealed from should be reversed and the indictment dismissed.
Judges Dye, Fuld, Froessel and Van Voorhis concur with Judge Foster ; Chief Judge Desmond and Judge Burke dissent and vote to affirm.
Judgment reversed, etc.

. Defendant voluntarily waived a jury trial as to each of the three misdemeanor counts.

. The three counts in the indictment alleged violations during the tax periods July 1, 1956 to June 30, 1957; July 1, 1957 to June 30, 1958; and January 1, 1957 to December 31, 1957.