**UNITED STATES ex rel. Frank LAINO, Relator,**

v.

**Walter M. WALLACK, Warden of Wallkill Prison, Wallkill, New York, Respondent.**

United States District Court
S. D. New York.
July 7, 1964.

to ten years for each of the crimes of bribery and grand larceny in the first degree, and to a term of three and one-half to seven years for the crime of fraudulently presenting bills or claims to public officers for payment, all sentences to run concurrently. The judgment of conviction was affirmed without opinion by the Appellate Division, Fourth Department, 17 A.D.2d 1029 (1962), and leave to appeal to the New York Court of Appeals was denied in January 1963. Thereafter, the United States Supreme Court, in a per curiam opinion, dismissed relator's appeal, and treating the papers whereon the appeal was taken as a petition for a writ of certiorari, denied certiorari, Laino v. New York, 374 U.S. 104, 83 S.Ct. 1687, 10 L.Ed.2d 1027 (1963). Two Justices were of the opinion that probable jurisdiction should be noted. In January 1964, a motion by relator in the New York Court of Appeals for reargument of the motion for leave to appeal was denied.

Relator's main contention in his application to this Court, as well as on appeal in the state courts, is that his 1961 conviction was obtained in violation of his constitutional privilege against self-incrimination. Relator previously had been convicted in July 1960, after a non-jury trial at an Extraordinary Special and Trial Term of the Supreme Court, Oneida County, of income tax evasion in violation of the Tax Law of the State of New York.[2] This conviction was set aside by the New York Court of Appeals on July 7, 1961, on the ground that testimony of relator before the Extraordinary Grand Jury,[3] which had indicted him on the tax evasion counts, had been obtained

John R. Davison, Albany, Stephen D. Finale, New York City, of counsel, for relator.

Louis J. Lefkowitz, Atty. Gen., for State of New York, Lillian Cohen, New York City, of counsel, for respondent.

FEINBERG, District Judge.

This is an application for a writ of habeas corpus by relator Frank Laino. After a trial by jury at an Extraordinary Special and Trial Term of the Supreme Court of Oneida County, in Rome, New York,[1] relator was convicted and sentenced in December 1961 to terms of five

---

1. The state proceedings involved in this case were a part of a special investigation of various criminal enterprises in Oneida County under the direction of the Attorney General, conducted at a Special and Extraordinary Term of the Supreme Court appointed by the Governor in October 1958.

2. The details of the events leading up to the first conviction are summarized in People v. Laino, 10 N.Y.2d 161, 218 N.Y.S.2d 647, 176 N.E.2d 571 (1961).

3. The Extraordinary Grand Jury, convened in 1958, was originally authorized to inquire into prostitution, gambling and public corruption in the County of Oneida. Relator had appeared before the Extraordinary Grand Jury pursuant to subpoena on March 31, 1959, and at that time was informed that the subject of the inquiry was the nature of the tire purchases undertaken by the City of Utica from the Laino-Fisk Tire Service. On June 18, 1959, the powers of the

under compulsion of subpoena and used against him at the trial in violation of his privilege against self-incrimination under the New York State Constitution (art. 1, § 6). People v. Laino, 10 N.Y. 2d 161, 218 N.Y.S.2d 647, 176 N.E.2d 571 (1961). The Court of Appeals further held, however, that having failed to comply with the procedural requirements of the New York immunity statute (Penal Law § 2447), relator could be reindicted "if sufficient evidence, independent of the evidence, links, or leads furnished by [relator] * * * is adduced to support it * * *." 10 N.Y.2d at 173, 218 N.Y.S.2d at 657, 176 N.E.2d at 578.

After his conviction of income tax evasion, but prior to reversal of that conviction by the Court of Appeals, relator appeared, under subpoena, on two additional occasions[4] before the original Extraordinary Grand Jury, and, after executing a limited waiver of immunity, testified, *inter alia,* with respect to tire sales by the Laino-Fisk Tire Service to the City of Utica. On January 30, 1961, an additional Grand Jury that had been inquiring into these tire sales (but before which relator apparently never testified), handed down the indictment that was the basis for the conviction which relator seeks to challenge on this application for a writ.

Relator's principal contentions here are (1) that his second conviction was based upon links and leads obtained from the testimony which he gave on his first appearance before the Extraordinary Grand Jury in violation of his state and federal constitutional rights, and which the New York Court of Appeals, in reversing his conviction, had held (10 N. Y.2d at 172, 218 N.Y.S.2d at 656, 176 N.E.2d 571) could not be used against relator in a subsequent criminal prosecution, and (2) that his testimony upon his second and third appearances before the Extraordinary Grand Jury, and links and leads obtained from such testimony, were used as a basis for relator's second indictment and conviction, in violation of his state and federal constitutional rights. With respect to the second contention, relator maintains that the limited waiver of immunity executed by him was ineffective to waive his constitutional rights because (a) he signed the waiver under economic duress because he feared that the penalties of Section 103–b of the General Municipal Law would be invoked against him if he refused to testify,[5] and (b) at the time relator signed the waiver, he believed, as a result of the determination of the trial judge at his first trial,[6] that the testimony which he gave upon his first appearance before the Grand Jury could be used against him in a subsequent criminal prosecution.

Both of these contentions having been presented to the appellate courts of New York, relator ordinarily would be entitled now to consideration by this Court of the merits of his petition, 28 U.S.C. § 2254; Brown v. Allen, 344 U.S. 443, 447–450, 73 S.Ct. 397, 97 L.Ed. 469 (1953).

Grand Jury were extended to include violations of the Tax Law of the State of New York. The indictment containing the tax evasion counts was returned on July 1, 1959.

4. Relator's second and third appearances before the Extraordinary Grand Jury were on December 21, 1960 and January 12, 1961.

5. Section 103–b of the General Municipal Law provides that any person called to testify before a grand jury concerning any transaction or contract with the state or any political subdivision thereof who refuses to sign a waiver of immunity shall be disqualified from thereafter receiving any awards from or en-

tering into any contracts with any municipal corporation or public agency for a period of five years. Relator feared the loss of a garbage disposal contract with the City of Utica for which he had been announced as the lowest bidder.

6. Relator was convicted of tax evasion in July 1960. He signed the limited waiver of immunity on December 21, 1960. The conviction was affirmed, without opinion, by the Appellate Division, Fourth Department on January 5, 1961. 12 A.D.2d 880, 211 N.Y.S.2d 716. The conviction was reversed by the Court of Appeals on July 7, 1961. 10 N.Y.2d 173, 218 N.Y.S.2d 647, 176 N.E.2d 571.

However, I am of the opinion that, in view of two recent self-incrimination cases in the United States Supreme Court, which were decided subsequent to the state court determinations in this case, the instant application should be dismissed with leave to renew after relator moves for reargument in the New York Court of Appeals, in order to give the state court the opportunity to reconsider its original disposition in light of these two later Supreme Court decisions.

■ In Malloy v. Hogan, 84 S.Ct. 1489 (1964), the Supreme Court held that the privilege against self-incrimination guaranteed by the Fifth Amendment is applicable to the states through the Fourteenth Amendment, and that the availability of the federal privilege to a witness in a state inquiry is to be determined according to federal, rather than state, standards. In Murphy v. New York Waterfront Comm'n, 84 S.Ct. 1594 (1964), the Court held that testimony compelled in a state proceeding over a witness' claim that such testimony will incriminate him, and the fruits of such testimony, may not be used against the witness in a federal criminal prosecution. In its opinion, the Court noted that once a defendant demonstrates that he has testified, under a state grant of immunity, to matters related to a federal prosecution, *"the federal authorities have the burden* of showing that its evidence is not tainted by establishing that it had an independent legitimate source for the disputed evidence."* Id. 84 S.Ct. at 1609, n. 18 (emphasis added.); see id. 84 S.Ct. at 1614 (White, J., concurring).

These decisions have a significant bearing upon at least one of the arguments made by relator on this application, namely, that the trial judge placed upon relator the burden of proving that evidence offered by the prosecution was tainted and that the imposition of this burden upon relator violated his federal constitutional rights.[7]

■■ At relator's second trial, which resulted in the conviction challenged here, preliminary examinations were held (out of the presence of the jury) in order to determine the admissibility of certain evidence and testimony which relator contended were the product of links and leads obtained from his testimony on his first appearance before the Extraordinary Grand Jury. The trial judge overruled relator's objections[8] and permitted the evidence and testimony to go to the jury. Although the record is not clear on this point, there is some indication that the trial judge placed the burden on relator to show that testimony and evidence offered by the prosecution at the second trial were tainted.[9] Imposition of this burden upon relator would have been contrary to the federal standard of proof, see Murphy, 84 S.Ct. at 1609, n. 18 and 1614,[10] and if Malloy operates retroactively to make the federal standards governing the claim of privilege applicable to relator's trial, the procedural error would be of a federal constitutional dimension. If there is reason to believe that the determination of the trial judge was affected by a constitutionally impermissible allocation of the burden of proof, his findings cannot be

7. Relator's Supplemental Memorandum in Support of Petition for a Writ of Habeas Corpus, pp. 31–32.

8. The rulings of the trial judge are to be found at the following pages in the transcript of the second trial [hereinafter cited as "Tr."]: pp. 764–765; 2885–2886; 4382–4385. The procedure followed in conducting the preliminary examination is outlined at Tr. pp. 106–118.

9. See Tr. p. 117. It appears to have been the understanding of the prosecution that the trial judge placed the burden

upon relator, see Brief for Respondent, The People of the State of New York, New York Supreme Court, Appellate Division, Fourth Department, p. 95. On appeal, the state argued that "such burden—or at least the initial showing of proof—is properly, and can only be, on the defendant. * * *" Id. at p. 96, citing, People v. Ryan, 11 A.D.2d 155, 158, 204 N.Y.S.2d 1, 4 (3d Dep't 1960).

10. Cf. United States v. Coplon, 185 F.2d 629, 637 (2 Cir. 1950), cert. denied, 342 U.S. 920, 72 S.Ct. 362, 96 L.Ed. 688 (1951); United States v. Avila, 227 F. Supp. 3, 8 (N.D.Cal.1963).

controlling here. Townsend v. Sain, 372 U.S. 293, 314–316, 83 S.Ct. 745, 9 L.Ed. 2d 770 (1963).

■■ However, in view of the intervening decisions of the Supreme Court in Malloy and Murphy, I believe that, in the interests of sound federal judicial administration and the preservation of a proper balance between the state and federal courts in the administration of state criminal law, New York should have the opportunity to appraise the impact of these recent decisions upon the issues in this case.[11] Relator should move in the New York Court of Appeals for reargument [12] before this Court proceeds any further in the matter. While, technically, relator may have exhausted his state remedies, the policy underlying the exhaustion doctrine is to provide the state courts with the first opportunity to correct an alleged federal constitutional violation. See Fay v. Noia, 372 U.S. 391, 419–420, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963); cf. Midgett v. Warden, Maryland State Penitentiary, 329 F.2d 185, 186–187 (4 Cir. 1964); Mahurin v. Nash, 321 F.2d 662, 664 (8 Cir. 1963); United States ex rel. DeFlumer v. LaVallee, 216 F.Supp. 137, 140 (N.D.N.Y.1963). As a practical matter, it cannot be said that New York has had such an opportunity when, as here, the standards that were applied by the New York courts were, *at that time,* consistent with the obligations imposed upon the states by the Federal Constitution, as then interpreted by the Supreme Court of the United States.[13] Only recently, the Supreme Court has reaffirmed the "weighty interest [of the states] in having valid federal constitutional criteria applied in the administration of its criminal law by its own courts and juries." Jackson v. Denno, 84 S.Ct. 1774, 1790, quoting from, Rogers v. Richmond, 365 U.S. 534, 548, 81 S.Ct. 735, 5 L.Ed.2d 760 (1961). In Jackson, the Supreme Court, after holding that the trial of the relator in that case did not comport with constitutional standards, decided that it was New York, not the federal habeas corpus court, which should first provide the relator with an adequate evidentiary hearing. The Court emphasized both the interest of the relator and that of the state in having the state courts make the factual determination in accordance with proper constitutional standards before a federal district court acts upon a petition for habeas corpus.

Accordingly, the application for a writ is dismissed with leave to renew after disposition of relator's application for reargument in the New York Court of Appeals.

So ordered.

11. Among the other issues that it may be necessary to determine in this case is whether relator effectively waived his privilege at his second appearance before the Extraordinary Grand Jury. The trial judge, after a preliminary examination at relator's second trial, found that relator had waived and thereby consented to the use of any evidence subsequently given by him before the Grand Jury within the prescribed area of inquiry. Tr. pp. 762–764. To the extent that Malloy is applicable to the claim of privilege in this case, the *federal* standard of waiver would govern the effectiveness of relator's execution of the waiver of immunity. Fay v. Noia, 372 U.S. 391, 439, 83 S.Ct. 822 (1963); see Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938).

In addition, relator apparently contends that the standards articulated in the opinion of the New York Court of Appeals reversing relator's first conviction are no longer controlling as to either (1) the construction of the New York immunity statute (Penal Law, § 2247) or (2) the scope of the constitutional proscription against the use of incriminating testimony in a subsequent criminal prosecution. Relator's Supplemental Memorandum, pp. 32–33, citing, Counselman v. Hitchcock, 142 U.S. 547, 585–586, 12 S.Ct. 195, 35 L.Ed. 1110 (1892). See Murphy, 84 S.Ct. at 1617 and n. 6 (White, J., concurring).

12. *Cf.* United States ex rel. Lupo v. Fay, 332 F.2d 1020, n. 1 (2 Cir. 1964).

13. Adamson v. California, 332 U.S. 46, 67 S.Ct. 1672, 91 L.Ed. 1903, 171 A.L.R. 1223 (1947); Twining v. New Jersey, 211 U.S. 78, 29 S.Ct. 14, 53 L.Ed. 97 (1908).