**UNITED STATES of America**

**v.**

**INTERBOROUGH DELICATESSEN DEALERS ASSOCIATION, Inc., et al., Defendants.**

United States District Court
S. D. New York.

Nov. 4, 1964.

John J. Galgay, Chief, Department of Justice, Antitrust Division, New York City, for United States of America; David H. Harris and Philip F. Cody, New York City, of counsel.

Corcoran, Kostelanetz & Gladstone, New York City, for defendant Nathan Cohen; Boris Kostelanetz, Edward J. Daus, New York City, of counsel.

Meyer Schiff, New York City, for defendant Leonard Pines.

David M. Markowitz and Frederick M. Molod, New York City, for defendants Interborough Delicatessen Dealers Ass'n, Inc. and Louis Molod; David M. Markowitz, New York City, of counsel.

LEVET, District Judge.

The defendants Cohen, Pines and Molod have moved pursuant to Rules 6(e), 12 and 57(b) of the Federal Rules of Criminal Procedure to dismiss the indictment against them. The defendants contend that the United States government in its preparation and presentation of this case used evidence given by them in an investigation conducted by the New York State Attorney General.

The defendants Cohen and Pines were subpoenaed and testified under oath before an Assistant State Attorney General. The defendant Molod appeared voluntarily and testified under oath before an Assistant State Attorney General. The determination I have reached makes it unnecessary to treat the motions of these defendants separately.

Under New York law it is clear that the defendants Cohen and Pines received immunity from any use by the state authorities of their testimony in any subsequent state proceeding. Article I, § 6 of the New York State Constitution states in pertinent part: " * * * No person * * * shall * * * be compelled in any criminal case to be a witness against himself * * * ."

The New York courts have held that the individual need not assert the privilege, saying: " * * * a prospective defendant or one who is a target of an investigation may not be called and examined before a Grand Jury and, if he is, his constitutionally-conferred privilege against self incrimination is deemed violated even though he does not claim or assert the privilege." People v. Steuding, 6 N.Y.2d 214, 217, 189 N.Y.S.2d 166, 167, 160 N.E.2d 468, 469 (1959). The issuance of a subpoena provides the compulsion necessary to invoke the constitutional privilege. "In such a case the subpoena is deemed to be a form of compulsion, and the testimony thus compelled may not be used against the defendant as the basis of an indictment, or for any other purpose." People v. Laino, 10 N.Y.2d 161, 171, 218 N.Y.S.2d 647, 655, 176 N.E.2d 571, 577 (1961). "The scope of the inquiry," id. at 170, 218 N.Y.S.2d 647, 176 N.E.2d 577, made these defendants prospective targets within the protection of the New York Constitution. People v. DeFeo, 284 App.Div. 622, 131 N.Y.S.2d 806, rev'd on other grounds, 308 N.Y. 595, 127 N.E.2d 592 (1955).

■ The defendants Cohen and Pines, then, have obtained the immunity from prosecution provided by the New York Constitution. Standing alone, of course, this is not sufficient to provide any federal immunity. Although the federal government may, under the Supremacy Clause, grant immunity from state prosecution, a state may not unilaterally extend an immunity from federal prosecution. Murphy v. Waterfront Comm'n, 378 U. S. 52, 71, 84 S.Ct. 1594, 12 L.Ed.2d 678 (1964).

The source of any immunity to which the defendants herein are entitled must be federal. There is no federal statutory immunity available here. The provision

immunizing one who testifies in any proceeding under 15 U.S.C. §§ 1–11 relating to violations of the antitrust laws is inapplicable. 15 U.S.C. § 32; United States v. Monia, 317 U.S. 424, 63 S.Ct. 409, 87 L.Ed. 376 (1943). It is asserted, however, that the Fifth and Fourteenth Amendments of the United States Constitution as interpreted in Murphy v. Waterfront Comm'n, supra, insulate them from federal prosecution.

In Murphy, the court concluded: "[W]e hold the constitutional rule to be that a state witness may not be compelled to give testimony which may be incriminating under federal law unless the compelled testimony and its fruits cannot be used in any manner by federal officials in connection with a criminal prosecution against him." 378 U.S. at 79, 84 S.Ct. at 1609. There the petitioners were subpoenaed to testify at a hearing conducted by the Waterfront Commission of New York Harbor (a bi-state body). Notwithstanding a grant of immunity from prosecution under the laws of New Jersey and New York, the petitioners refused to answer questions at the hearing on the ground that the answers might tend to incriminate them under federal law. Petitioners were held in contempt of court and the New Jersey Supreme Court affirmed the civil contempt judgments. The convictions were vacated by the Supreme Court.

The opinion in Murphy did not indicate what standard was to be applied in determining when the Constitutional privilege is conferred. The court declared only that in connection with a criminal prosecution the federal government must be prohibited from using testimony that the defendant has been *compelled* to provide in a state proceeding, 378 U.S. at 79, 84 S.Ct. 1594. Whether "compulsion" had a federal or state definition the court did not specify.

However, if each state were permitted to define "compulsion" as it relates to the federal self-incrimination privilege, then Cohen and Pines under the New York interpretation would be entitled to an immunity from any federal prosecution utilizing their compelled testimony or its fruits, since as New York defines it these defendants were *compelled* to testify.

The dispositive issue here is whether the meaning of the word "compelled" in the construction of the Fifth and Fourteenth Amendments set forth in Murphy is to be governed by state or federal standards.

In Malloy v. Hogan, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964), a case decided the same day as Murphy, the Supreme Court decided "that the Fourteenth Amendment guaranteed the petitioner the protection of the Fifth Amendment's privilege against self-incrimination. * * *" 378 U.S. at 3, 84 S.Ct. at 1491. In so doing the court held that "the same standards must determine whether an accused's silence in either a federal or state proceeding is justified." 378 U.S. at 11, 84 S.Ct. at 1495. In reaching this latter conclusion the court stated:

"We have held that the guarantees of the First Amendment, the prohibition of unreasonable searches and seizures of the Fourth Amendment, and the right to counsel guaranteed by the Sixth Amendment are all to be enforced against the States under the Fourteenth Amendment according to the same standards that protect those personal rights against federal encroachment. [All citations omitted]." 378 U.S. at 10, 84 S.Ct. at 1495.

██ I conclude, therefore, that federal standards must govern in determining when testimony is compelled. Any other conclusion would fail to observe the traditional limitations of state sovereignty. A state may not provide a lesser privilege than that guaranteed by the United States Constitution. See 378 U.S. at 10–11, 84 S.Ct. 1489. Nor may it unilaterally expand the federal privilege outside its own jurisdiction.

██ The question next presented is whether a subpoena qualifies as compulsion to testify under federal standards where there has been no refusal to an-

swer questions and no explicit claim of privilege.

It is clear that these defendants would have obtained no federal constitutional immunity had they testified in a federal proceeding without claiming the privilege. "The privilege may not be relied on and must be deemed waived, if not in some manner fairly brought to the attention of the tribunal which must pass upon it." United States ex rel. Vajtauer v. Comm'r of Immigration, 273 U.S. 103 at 113, 47 S.Ct. 302 at 306, 71 L.Ed. 560 (1927); see Smith v. United States, 337 U.S. 137, 150, 69 S.Ct. 1000, 93 L.Ed. 1264 (1949); Emspak v. United States, 349 U.S. 190, 75 S.Ct. 687, 99 L.Ed. 997 (1955). Or as restated, "If a witness before a grand jury desires the protection of the privilege, he must claim it or he will not be considered to have been compelled to testify within the meaning of the Amendment." United States v. Pile, 256 F.2d 954, 956 (7th Cir. 1958).

 The Fifth Amendment guarantee does not prevent a witness from voluntarily giving incriminating testimony. "The amendment speaks of compulsion. It does not preclude a witness from testifying voluntarily in matters which may incriminate him." United States v. Monia, 317 U.S. 424, 427, 63 S.Ct. 409, 410, 87 L.Ed. 376 (1943).

Murphy does not suggest a different standard. There the witness claimed the privilege and, after being granted state immunity, continued to claim the privilege on the basis of federal incrimination.

In the present case all three defendants, accompanied by counsel, testified before the Assistant State Attorney General and never made any claim of privilege. Indeed, the defendant Molod appeared and testified in answer to a letter addressed not to him but to Interborough Delicatessen Dealers Association, Inc. Therefore, no defendant was compelled to testify in federal terms and no one of the defendants is entitled to the protection against self-incrimination provided by the United States Constitution.

For the foregoing reasons I am constrained to deny the motions to dismiss the indictments. The motions of defendants Cohen, Pines and Molod are denied in all respects.

Settle orders on notice.