**UNITED STATES of America ex rel. Marvin ZEVIN on behalf of James Burke, Petitioner,**

v.

**William CAHN, District Attorney of Nassau County, Respondent.**

**UNITED STATES of America ex rel. Michael A. CORCIONE, Richard Schroeder, Frank Heitman, Plaintiffs,**

v.

**William CAHN, District Attorney, Nassau County, Defendant.**

**Nos. 68–C–139, 68–C–158.**

United States District Court
E. D. New York.

March 6, 1968.

276

Bracken & Sutter, Mineola, for petitioner and plaintiffs, Marvin Zevin, John Joseph Sutter, Mineola, of counsel.

William Cahn, Dist. Atty. of Nassau County, defendant, George D. Levine, Asst. Dist. Atty., of counsel.

BARTELS, District Judge.

Michael A. Corcione, Richard Schroeder and Frank Heitman were subpoenaed to testify before the Grand Jury of Nassau County on two previous occasions and James Burke on one previous oc-

casion. After having refused to testify on each occasion following a grant of immunity, they were summarily committed for civil contempt by the County Court and were sentenced to serve and did serve thirty days in the Nassau County jail for each offense. Following their citation for contempt, a notice of appeal was filed in the Appellate Division and an application for a certificate of reasonable doubt and release on bail was made to the Supreme Court of Nassau County and thereafter denied. Corcione, Schroeder and Heitman for the third time, and Burke for the second time have been subpoenaed to appear before the Grand Jury of Nassau County again, which appearance they claim will involve the same investigation and testimony theretofore refused.

Three of the above now petition this Court for an injunction and one for a writ of prohibition against the District Attorney enjoining him from taking any action against the petitioners "as a result of any further failure on their part to answer questions before a Grand Jury of Nassau County". Although there is no such remedy in the nature of a Federal writ of prohibition to restrain State action,[1] the application will be treated as a complaint and a motion seeking injunctive relief against the District Attorney from compelling the petitioners to give self-incriminating testimony. Petitioners do not particularize the legal basis of their claims but they are evidently founded upon 28 U.S.C.A. § 1343(3) and the Civil Rights Act, 42 U.S.C.A. § 1981 et seq., under which each petitioner contends that his constitutional rights are being abrogated because (i) the immunity offered him is not sufficiently broad and hence his testimony would be in violation of the Fifth Amendment; (ii) insufficient time is afforded him to prepare his defense of the

contempt proceeding, in violation of the due process clause of the Fourteenth Amendment; (iii) no opportunity has been afforded him to inquire into the scope of the investigation, the legality and make-up of the Grand Jury panel, and the constitutionality of the new immunity sections of the State Code of Criminal Procedure, in violation of the due process clause of the Fourteenth Amendment; and (iv) multiplication of civil contempts resulting in double punishment in violation of his rights under the Fourteenth and Eighth Amendments.

I

The crux of these petitions, as far as injunctive relief is concerned, is not the specifics mentioned by the petitioners but the possibility of service of a sentence by them arising from a probable contempt proceeding, before they have had an opportunity to obtain a decision from the State courts upon the merits of their appeal. In concluding whether such relief should be granted, the Court is faced with the provisions of 28 U.S.C.A. § 2283, which expressly prohibit a Federal court from staying State court "proceedings" except as "expressly authorized by Act of Congress". In Dombrowski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965), the court held that where the proceeding was merely threatened, it was unnecessary to decide whether suits under the Civil Rights Act came within the "expressly authorized" exception of the statute since the bar applied only to suits already instituted.[2] In this case proceedings have been instituted in the State court. Assuming the Civil Rights Act is an "expressly authorized" exception to the ban of Section 2283, the phrase "expressly authorized" does not mean that such exceptions are "expressly mandated". The Court is not required

---

1. Such a writ may be invoked under 28 U.S.C.A. § 1651 as an extraordinary remedy in aid of this Court's jurisdiction and in lieu of appeals.

2. Goss v. State of Illinois, 312 F.2d 257 (7 Cir. 1963) and Baines v. City of Dan-

ville, 337 F.2d 579 (4 Cir. 1964), cert. denied, Chase v. McCain, 381 U.S. 939, 85 S.Ct. 1772, 14 L.Ed.2d 702 (1965), hold that the Civil Rights Act is not an exception to suits already instituted.

by the statute to invoke its equity jurisdiction. In accordance with Congressional policy of leaving to the State courts the trial of criminal cases, such jurisdiction will not be exercised for the purpose of granting injunctive relief unless it appears from the record that the petitioners are threatened with irreparable injury both great and immediate, other than that incidental to every criminal proceeding (Cleary v. Bolger, 371 U.S. 392, 83 S.Ct. 385, 9 L.Ed.2d 390 (1963); Wilson v. Schnettler, 365 U.S. 381, 81 S.Ct. 632 (1961); Douglas v. City of Jeannette, 319 U.S. 157, 63 S.Ct. 877, 87 L.Ed. 1324 (1943); Stefanelli v. Minard, 342 U.S. 117, 72 S.Ct. 118, 96 L.Ed. 138 (1951)).

## II

■■ This Court must decide therefore whether petitioners have presented such exceptional circumstances showing irreparable injury arising from an alleged violation of their due process rights in denying them a release before appeal, justifying Federal intervention. The mere possibility of error in the application of constitutional principles by the State court will not ordinarily amount to irreparable injury necessary to justify an injunction. For example, Federal courts will not halt a State criminal proceeding allegedly involving certain due process violations, such as erroneously rendering evidence admissible in violation of the Fourteenth Amendment, or refusing to suppress inadmissible evidence obtained by an illegal search, or certain other asserted unconstitutional proceedings by the State courts, some of which have been listed by the Supreme Court in Stefanelli v. Minard, supra; see also, Dombrowski v. Pfister, supra, n. 3, p. 485. The Federal courts must assume that the State courts are equally as jealous in guarding the defendant's constitutional rights in criminal proceedings. Petitioners cite Harris v. United States, 382 U.S. 162, 86 S.Ct. 352, 15 L.Ed.2d 240 (1965), in which the Supreme Court held that where a recalcitrant witness before a Federal Grand Jury is charged with contempt, a hearing under Rule 42(b) of the Federal Rules of Criminal Procedure, 18 U.S. C.A., was necessary. That case was concerned with Federal procedural regularity in contempt proceedings and did not involve incarceration before appeal. It is no authority for Federal intervention upon the ground that the identical procedure must be followed in a State court contempt proceeding. In other words, the petitioners must first exhaust their State remedies and the due process questions which might be raised in *Harris* must first be decided by the Court of Appeals of the State of New York and not by the Federal court.

■ Stripped of its irrelevancies, the petition, in requesting injunctive relief, appears to constitute an indirect attack upon the constitutionality of Section 527 of the New York Code of Criminal Procedure providing for a stay of execution of a judgment on appeal only upon a certificate of reasonable doubt from the Supreme Court "but not otherwise". If the petitioners were not threatened with detention, there would be little doubt that their only remedy would be in the State courts. In the past the petitioners have been denied a certificate of reasonable doubt and they fear that a similar denial would subject them to penal service before a review upon appeal.[3] Since this section expressly provides for a judicial review of the record before a determination of the existence or non-existence of reasonable doubt, a certificate of such doubt is not an unreasonable requirement for a stay. In this case the State court considered some of the con-

3. The criminal contempt in this case was treated as though committed before the Grand Jury and not in the immediate presence of the court. Consequently, defendant's contention that the petitioners' remedy is an Article 78 proceeding and not an appeal, is without merit. When an appeal is taken, a denial of a certificate of reasonable doubt in turn is not appealable. Epps v. Supreme Court, First Judicial Dept., 19 A.D.2d 807, 243 N.Y.S.2d 377 (1st Dept. 1963).

stitutional questions raised by the petitioners before denying the certificate.

■ The risk of penal servitude upon an adverse decision pending an appeal is inherent in most criminal proceedings before final adjudication by the highest State court or the Supreme Court of the United States. For instance, under Rule 46(a) (2) of the Federal Rules of Criminal Procedure, 18 U.S.C.A., bail may be allowed "unless it appears that the appeal is frivolous or taken for delay". If the Court finds the appeal frivolous, bail is denied and the term must begin. Such denial may be equated to the denial of a certificate of reasonable doubt in the State court. At all events, there is no constitutional right to bail. In United States ex rel. Mendez v. Fish, 259 F.Supp. 146 (S.D.N.Y.1965), the petitioner was denied a writ of habeas corpus for release from detention upon the ground that after a denial of a certificate of reasonable doubt upon a State court appeal, she had no constitutional right to bail. Similarly, a State prisoner who has not exhausted his State remedies, is not entitled to release pending appeal even though the shortness of his term and his financial inability to obtain bail will require him to complete his sentence before the State remedy can be effective. Iles v. Ellis, 264 F.Supp. 185 (S.D. Ind.1967). Other instances involving confinement before exhaustion of State remedies appear upon denial of habeas corpus applications (Johnson v. Walker, 317 F.2d 418 (5 Cir. 1963); Hamilton v. Buchkoe, 283 F.2d 816 (6 Cir. 1960); United States ex rel. Sullivan v. Heinze, 250 F.2d 427 (9 Cir. 1957), cert. denied, 356 U.S. 943, 78 S.Ct. 789, 2 L.Ed.2d 818; People of State of New York ex rel. Epps v. Nenna, 214 F.Supp. 102 (S.D.N.Y.1963)), or incarceration under a State statute (People v. Bibb, 252 F.2d 217 (7 Cir. 1958); Starnes v. City of Milledgeville, 56 F.Supp. 956 (M.D. Ga.1944)). Thus the petitioners have failed to show a danger of irreparable injury arising from possible detention because of proposed action in the State court.

■ In addition to the lack of equity jurisdiction, the application is premature. There has been no threat at this time of deprivation of petitioners' civil rights except insofar as the Court is asked to assume that the subpoenas have been properly served, that the same questions will be asked, that petitioners will fail to answer them, that they will be subjected to the same disciplinary proceedings, and that a certificate of reasonable doubt will be denied. These events while probable, are not certain. In a word, the petitioners are claiming in their complaint the privilege against self-incrimination in advance of questions actually propounded. This is impermissible. People v. Laino, 10 N.Y.2d 161, 218 N.Y.S.2d 647, 176 N.E.2d 571 (1961), appeal dismissed, Laino v. New York, 374 U.S. 104, 83 S.Ct. 1687, 10 L.Ed.2d 1027 (1963). Futhermore, a motion to quash the subpoenas in the State court pursuant to Section 2304 of the New York Civil Practice Law and Rules, is still available to them.

The other constitutional arguments for intervention are without merit.

The complaint and the petition are dismissed and the stays vacated. This is an order.