**In the Matter of Grand Jury Subpoenas Served on Irving BRAVER and Morton Lehrer.**

**No. M 11–188.**

United States District Court
S. D. New York.

Nov. 13, 1969.

**468**

Robert M. Morgenthau, U. S. Atty., Southern District of New York, for the United States; Lars I. Kulleseid, Asst. U. S. Atty., of counsel.

Louis Bender, New York City, for petitioners; Lloyd A. Hale, New York City, of counsel.

FRANKEL, District Judge.

Irving Braver and Morton Lehrer move to quash grand jury subpoenas. They urge that in the circumstances to be described any attempt to enforce these subpoenas would offend against the Fourth, Fifth and Sixth Amendments.

Both of the movants were named as defendants in a complaint dated April 16, 1968, which charged that they had violated 18 U.S.C. § 201 by bribing an Internal Revenue Service official. It

appears that Braver was arrested on April 18 and Lehrer thereafter appeared voluntarily on April 29, 1968, to answer the complaint; each was released on his own recognizance; and a hearing was scheduled for May 15, 1968. As commonly happens, the hearing was never held. The movants, understandably, have not pressed for a hearing or moved for a dismissal of the complaint. But it is the existence of the complaint, and the theoretically unfinished business attending it, that supplies the asserted grounds for quashing the grand jury subpoenas issued a year and a half later, on October 16, 1969.

Having been named in the complaint as defendants, the movants say, they have a "right not to be witnesses in [a] criminal case against them, [a] right not to give testimony which might tend to incriminate them, and [a] right to representation by counsel in any compulsory interrogation. These rights," their argument continues, "cannot be subverted through the guise of grand jury testimony where their counsel will be excluded, and their right to remain silent eroded at a time when they cannot be advised." [1] The contentions are by no means devoid of substance. But the court concludes that controlling precedents and principles require denial of the motion. It might well be sufficient for this conclusion to cite United States v. Pilnick, 267 F.Supp. 791, 798–799 (S.D. N.Y.1967), and the authorities there collected by Judge Weinfeld. And see United States v. Corallo, 413 F.2d 1306, 1328 (2d Cir. 1969); United States v. Wolfson, 405 F.2d 779, 784–785 (2d Cir. 1968), cert. denied, 394 U.S. 946, 89 S.Ct. 1275, 22 L.Ed.2d 479 (1969); United States v. Capaldo, 402 F.2d 821, 823–824 (2d Cir. 1968), cert. denied, 394 U.S. 989, 89 S.Ct. 1476, 22 L.Ed.2d 764 (1969); United States v. Fortunato, 402 F.2d 79, 82 (2d Cir. 1968), cert. denied, 394 U.S. 933, 89 S.Ct. 1205, 22 L.Ed.2d 463 (1969). A few observations are added, however, to reflect the specific argu-

1. Affidavit of counsel in support of motion, ¶8.

ments the court has considered on this motion.

■ 1. It is noted as a preliminary, if not decisive, matter that the grand jury's investigation and the subpoenas some 18 months after the complaint naming Braver and Lehrer are not confined to the narrow "case" of bribery in which they were named as defendants. The subpoenas refer to the broad subject of conspiracy under 18 U.S.C. § 371, not to the more specific matters in § 201. The grand jury is entitled to explore, and is said to be exploring, large areas of activity in which acts of official corruption or attempts to corrupt are thought to have occurred. While the specific subject of the 1968 complaint against them may well be involved, that does not define or summarize the scope of the inquiry. No reason has been shown why the fact of a complaint against them early in 1968 should confer immunity upon these movants against even being required to *appear* now before the grand jury.

■ 2. The argument of the present motion tends to reaffirm the wisdom of the position that "potential" defendants, including those named in a complaint, are not insulated against commands to appear before a grand jury. E. g., United States v. Pilnick, *supra*.[2] It is impossible to say now that the movants could not be asked questions to which they would be unable (or, even, not disposed) to plead the privilege against self-incrimination. While the possibility may be remote, it is also within the realm of things readily conceivable that the United States Attorney might see fit to grant immunity to the movants in exchange for their knowledge about broad problems of alleged corruption in government. See 18 U.S.C. §§ 2514 and 2516(1) (c). There is no need now to pursue such speculations. It is sufficient to say that the investigatory power of the grand jury may not be thwarted by the excessive claim of a privilege not to appear at all.[3]

The motion is denied. So ordered.

---

2. It is interesting that the New York Court of Appeals—which has adopted a rule, more "liberal" than that in the federal courts, granting immunity from prosecution based upon grand jury testimony given by a prospective defendant or target of an investigation, whether or not a constitutional privilege is asserted [People v. Laino, 10 N.Y.2d 161, 170–171, 218 N.Y.S.2d 647, 655, 176 N.E.2d 571 (1961); People v. Steuding, 6 N.Y. 2d 214, 216–217, 189 N.Y.S.2d 166, 167, 160 N.E.2d 468 (1959)]—has recently rejected the claim that "subpoenas issued to prospective defendants [should] be quashed prior to an appearance before the investigating body. * * * On the contrary, there is no discernible reason for holding that a prospective defendant or target may not be compelled to at least attend a Grand Jury investigation." Boikess v. Aspland, 24 N.Y.2d 136, 140, 299 N.Y.S.2d 163, 167, 247 N.E. 2d 135, 137 (1969).

3. As the last point of a supplemental memorandum of law, filed with leave of court a week after oral argument, defense counsel submits that Braver should be examined now by a doctor and that there should be a report as to whether he is in shape to go before the grand jury without serious danger to his health. The suggestion is supported by a copy of a letter to counsel dated October 29, 1969 (a week before the oral argument), saying Braver had been hospitalized almost a year before for "arteriosclerotic heart disease, subclinical coronary insufficiency." The court is, of course, highly sensitive to dangers of injury and persecution through the use of its process. But experienced counsel like Braver's would know the patent insufficiency of such a tardy, unsworn and "subclinical" showing as is offered here.